## THE UTICA INSURANCE COMPANY *vs.* CADWELL, BADGER and KING.

Where an insurance company on being applied to for the loan of a sum of money, agree to make the loan on condition that the borrower will effect an insurance with the company, and such insurance is made and a premium paid not exceeding the usual rate of charges in such cases, such facts do not amount to evidence of usury.

The Utica Insurance Company have a right to invest their *surplus funds* in loans.

THIS was an action of assumpsit tried at the Oneida circuit in April, 1828, before the Hon. NATHAN WILLIAMS, one of the circuit judges.

The declaration contained a count on a promissory note for $1000, dated 28th September, 1825, payable in 90 days, to Henry Green or order, and endorsed by him to the plaintiffs and the common money counts. The defendants pleaded non assumpsit and specially that in July, 1822, the stockholders of the Utica Insurance Company, in pursuance of authority given by the act of their incorporation, voted to discontinue the business of the corporation, and that the business was accordingly discontinued, and that the receiving of the note declared on was subsequent to such vote, &c. The plaintiffs replied, denying the vote of discontinuance, &c.

The incorporation of the Utica Insurance Company was proved by the production of an exemplification of the act of

But having called in a part of their capital for the express purpose of making loans in a particular way, viz. by the issuing of checks in the shape of bank notes, *it was held*, that loans thus made are in violation of the *restraining* act, and that a note taken upon such loan is void.

The money lent may however be recovered under the common count, and *checks* drawn, received as money, and duly paid, will be considered *money*. The recovery however, in such case, being on the *contract* as distinguished from the *security*, an action cannot be sustained against the borrower *and* his sureties, the sureties not being parties to the contract.

A corporation may be proved by an exemplification of the act of incorporation and acts of *user* under it.

Reasonable notice must be given to produce books or papers before the time when the cause *may* be tried. What shall be deemed reasonable notice depends upon the circumstances of the case. Whether *secondary* evidence shall be admitted depends upon the discretion of the judge.

It is no objection to the competency of a witness in an action by a monied institution that a few days before the trial he had sold out his stock, although he stated that he supposed he could purchase it back if he chose; he testifying that the transfer by him was without any agreement, either express or implied, that the stock should be re-conveyed.

incorporation passed in March, 1816, and evidence of *user* under it.  The note was given on a loan of $1000, made by the plaintiffs to Cadwell, one of the defendants, the other defendants having signed as sureties ; the payee was a nominal party.  In 1825, the Utica Insurance Company called in stock to the amount of $200,000, which they deposited in the Tradesman's Bank, in the city of New-York, and received interest for the deposit.  These funds were not employed in the business of insurance, but were used in making loans. In November, 1825, the company had loaned out $50,000 at Utica, and they also loaned money in New-York.  Until June, 1825, they made their loans in bank bills, but after that time they issued checks, which were on silk paper, resembling bank notes, and their loans were made in checks and bank bills.  The checks drawn on the Tradesman Bank were always at *par* in city and country, and were esteemed better than country bank bills, because paid in New-York.  They were always paid when presented.  On the 30th August, 1825, a negociation was commenced between Green, the payee of the note and secretary of the company, and Cadwell, one of the defendants, relative to a loan.  Cadwell was required to make a note with surities, and to effect an insurance ; and was given to understand that a renewal of his note would depend upon his giving a good circulation to the paper of the company, and making frequent exchanges with the company.  These terms he agreed to ; he effected an insurance for one year on a dwelling house and other buildings to the amount of $2,900, and paid a premium of $21,60, which was rather lower than the usual rate of charging for insurance.  The money was loaned in the usual way in giving checks, and the note taken.

The defendants called for the production of the books of the company, to shew the time and manner of the loan in this case, and the proceedings of the stockholders in relation to the discontinuance of the business of the company.  Notice to produce the books was given on the 5th April, at 4 P. M.  The circuit commenced on the 7th April, at 10 A. M.

UTICA,
August, 1829.

Utica Ins. Co.
v.
Cadwell.

The books were in New-York, where the company have an office, and where the principal part of the stockholders reside. The company, however, have also an office in Utica. A journey in that season of the year may be performed from Utica to New-York and back in four days. The judge sustained the objection, and decided that the defendants were not entitled to give parol testimony of the contents of the books.

A question arose, on the trial of the cause, as to the competency of a witness called by the plaintiffs. On a preliminary examination, he testified that a few days before the trial, he was a stockholder and director of the company; that he had sold his stock to a person who was able to pay for it; that there was no agreement, express or implied, that he should take the stock back again, but he supposed he could buy it back if he chose so to do. The judge decided that the witness was competent.

The evidence being closed, the counsel for the defendants insisted that the proof of the existence of the corporation was defective, inasmuch as the plaintiffs had not shewn a compliance with the requirements of the act in the organization of the company; that the loan was usurious, the insurance being effected as a mere cover to evade the statute, and the insurance and the other onerous terms imposed upon the borrower giving the lender more than interest at the rate of seven per centum per annum; and that if not ususurious, it was a banking transaction in violation of the *restraining act*, and so requested the judge to charge the jury. The judge charged the jury that the plaintiffs were entitled to recover if they were satisfied that the premium paid on the insurance was not greater than was customary in such cases. The defendants excepted. The jury found for the plaintiffs the amount due on the note. A motion was now made to set aside the verdict.

*J. A. Spencer*, for defendants. The loan in this case was a banking transaction, and as such the note is void under the restraining act. Whatever the devices were to evade the

statute, it is manifest from the facts of the case that the company were doing business as a bank. The cases of this same company against Scott, (19 Johns. R. 1,) and against Kip, (8 Cowen, 20,) settle the whole law on this subject.

The note also was usurious. The requirement that the borrower should effect an insurance with the company and pay them a premium, taken in connection with the loan, is evidence that this was a mere shift to evade the statute, and should have been distinctly submitted to the jury.

The notice to produce the books called for, was sufficient. It was no excuse that they were in New-York; they should have been at Utica.

The sale of stock by the witness who was objected to by the defendants, was not bona fide. His interest was the same after as before the transfer. It was a device to enable him to be a witness. The sale of his stock did not divest him of his character of director.

*S. A. Foot,* for plaintiffs. There is no restriction on this company as to the place where they shall conduct their business, except as to the election of the directors of the company, which, by the act of their incorporation, must be at Utica. The company had a surplus fund deposited in the Tradesman's Bank in New-York. They had a right to loan such fund on personal security, and to make their loans in checks on the bank where their deposit was made.

There was no usury in the transaction. The plaintiffs were incorporated as an insurance company, and had a right to solicit business. There is no pretence that the premium paid exceeded the ordinary rate. The risk was incurred, and a consideration passed for the premium. The requirement to keep checks in circulation, and to make exchanges, is no evidence of usury. The defendants did not ask the judge to submit this question to the jury; they only desired him to decide the law. He did so, and they cannot now complain that the question was not left to the jury.

The parol evidence of the contents of the books was properly excluded. The notice was but forty two hours, given at Utica, to produce books which were in New-York. It was

*(margin:)* UTICA, August, 1829.

Utica Ins. Co. v. Cadwell.

UTICA,
August, 1829.

Utica Ins. Co.
v.
Cadwell.

too late for the first day of the circuit, when they were re-
quired to be produced; and the plaintiffs were not bound to
take measures to produce them at a subsequent day, on the
supposition that they might be obtained before the cause was
reached. The witness who was objected to was not inter-
ested; he could neither be a gainer or loser by the event.

*By the Court*, SAVAGE, Ch. J.   I think the judge decided
correctly in rejecting the parol proof.   Where papers are at
a distance, the party or his attorney is not bound, upon no-
tice, to leave court and his business, and go or send for books
or papers, unless he has reasonable time before the cause
*may* be tried.   It happened that between the time of serving
the notice and the trial there was time to have sent to New-
York; but the attorney could not know that the cause would
not be reached, or that the circuit would last till he could ob-
tain the books.   The judge at the circuit must exercise a
reasonable discretion as to admitting secondary evidence,
where the primary is withheld after notice to produce it.   The
party should have reasonable notice; and what is reasonable
must depend upon circumstances.   Where the paper or
book wanted is in court, or near by, a notice after the trial
has commenced may be sufficient; but where they are at a
distance, a suitable time should be allowed.

The objection to the competency of the witness was prop-
erly overruled.   He had no interest; he had sold *bona fide*
his stock, and was competent.   This very point was decided
in *The Bank of Utica* v. *Smalley*, (2 Cowen, 777,) where the
witness Colling assigned his stock after he was sworn in the
cause, and was then held to be a competent witness.   The
witness could not be a director without being a stockholder.

The principle grounds of objection, however, are, 1. That
this loaning was a cover for usury; 2. That it was a bank-
ing transaction, in violation of the restraining act.   The
judge at the circuit decided, and so charged the jury, that the
plaintiffs had sufficiently proved themselves a corporation;
that the loan was made from their surplus funds; that the
plaintiff's checks paid to the borrower were the same as
money, as they were always paid when presented; that

there was nothing improper in the insurance of the defendant's buildings at the usual rate, that being part of the business of the company, and that the note was not therefore usurious; and that the plaintiffs were entitled to recover. To the whole of this charge the defendants excepted.

The judge was undoubtedly correct, according to the decisions of this court, in deciding that the plaintiffs had proved themselves a corporation; and that they had a right to loan money by way of investing their surplus funds. I am of opinion, also, that he was right in saying that there was no usury in the transaction. The insurance was a lawful act, and the principal business of the plaintiffs; and as it was made at the usual rates of premium, there could be no shift or contrivance in this transaction whereby the defendants were made to pay more than seven per cent. interest on the loan made. The defendant Cadwell paid the plaintiffs $21, 60, not for the loan of the money which he borrowed, but for the risk which the plaintiffs incurred in insuring his buildings against fire. The defendant received an equivalent for his premium independent of the loan.

I am not equally clear that the transaction in question was justifiable within the restraining act, and the rights of the plaintiffs under their charter, as expounded by this court.

By the restraining act, no person unauthorized shall become a proprietor of a fund for the purpose of issuing notes, receiving deposits, making discounts, or transacting any other business which incorporated banks may or do transact by virtue of the acts of incorporation. Now it appears in this case, that a part of the capital not wanted for the purpose of insurance, and not a part of their profits, was called in for the express purpose of being loaned in a particular way; the principal to be deposited, and checks to be drawn for the purpose of circulation. Thus a fund was virtually set apart by the plaintiffs for the purpose of issuing notes; not technically notes, but bills of exchange, which are substantially notes, for circulation, as bank notes. These checks were not intended to be presented for the purpose of withdrawing the deposit, because they received interest on the deposit; and if they can also receive interest on their checks, they have all

UTICA,
August, 1829.

Utica Ins. Co.
v.
Cadwell.

the profits of that part of banking business which consists in issuing notes, and more also ; for banks receive no interest on the capital which lies in their vaults, but only on their credits and notes in circulation. It seems to me, therefore, that the issuing checks prepared and intended for circulation like bank notes, not being authorized by their charter, was a violation of the restraining act. The consequence is, that the note is void, and the plaintiffs cannot recover upon it.

But it has been decided in the case of these plaintiffs against Kipp, (8 Cowen, 20,) that though the security is void, the contract of loan is not void. If therefore the plaintiffs have lent the defendants *money*, they may recover upon the count for money lent. It appears in this case that a negotiation took place between the defendant Cadwell and the plaintiffs for a loan. It was effected, and the other parties (defendants) are considered as surities. The plaintiffs had money in deposit in New-York, and drew their checks upon that fund. These checks authorized the holder to draw the money at pleasure, and it appears that all the checks presented to have been paid. Suppose an individual lends his check when he has funds, and it should appear that all his checks have been paid, the conclusion without evidence to the contrary, is, that the check has been paid. It is therefore money. Had there been but one check given to Cadwell, under the other circumstances appearing in this case, there could be no doubt that, as between him and the plaintiffs, the transaction was a loan of money ; and as between them, it can make no difference whether there was one check or one hundred. It seems to me, therefore, that there was a loan of money to Cadwell, but not to the other defendants. There is no liability upon them, but upon the note. They have had no other transactions with the plaintiffs.

This is a joint action against three defendants, against two of whom no cause of action is shewn. The plaintiffs have therefore failed. A new trial must be granted ; costs to abide the event.