## ·THE NARRAGANSETT BANK *vs.* THE ATLANTIC SILK COMPANY.

## CALEB WESTCOTT *vs.* THE SAME.

It is not necessary, in order to maintain an action on a demand against a company acting as a manufacturing corporation, that the plaintiff should prove that the corporation was organized, and divided its stock, &c. conformably to the directions of the Rev. Sts. *c.* 38, §§ 4, 9, and *c.* 44, § 3 : It is, in general, sufficient to give in evidence the act of incorporation, and the actual use of the powers and privileges of an incorporated company under the name designated in that act.

The records of a manufacturing corporation are the best evidence of the authority of its officers and agents to bind the corporation by contract : But if the plaintiff, in a suit against such corporation, gives the defendants notice to produce their records, and they refuse to produce them, he may give other evidence of such authority of their officers and agents.

In a suit against a close corporation, it is not necessary, nor regular, to issue a *subpœna duces tecum* to their clerk to bring their records into court.

In a suit against a manufacturing corporation, on a bill of exchange accepted by T. who signed as treasurer of the corporation, where the defendants refused to produce their records, on notice so to do, and a witness testified that he had seen the defendants' records, and that it appeared therein that T. was chosen treasurer at the first meeting ; it was held that a jury might legally infer that the treasurer was duly elected and authorized to accept the bill in suit.

So in a suit against the same corporation for machinery sold and delivered, under a contract with G., the president thereof, where the defendants refused to produce their records, and there was testimony, as to the choice of president, similar to that re-

specting the treasurer, and it further appeared that the machinery was received and used by the corporation ; it was held that a jury might presume that G. was author ized to contract for such machinery, or that his contract therefor had been ratified by the corporation.

THESE were actions of assumpsit, in which the general issue was pleaded, and notice given that the plaintiffs would be required to prove the legal existence of the defendants as a corpo ration. *Putnam, J.* before whom the cases were tried, made the following reports thereof :

The action brought by the *Narragansett Bank* was on this bill of exchange : " Nantucket, November 5. 1836. Four months after date pay to my own order fourteen hundred dollars, value received, and charge the same to my acc't. Gamaliel Gay. To Sam'l B. Tuck, Treasurer of Atlantic Silk Company." The drawee had written on the bill — " accepted. Sam'l B. Tuck, Treas'r A. S. Co. ; " and it was indorsed by the drawer and by Charles Dyer.

To prove the legal existence of the defendants as a corpora tion, the plaintiffs produced a copy of their charter, duly authenticated by the secretary of the Commonwealth, and bearing date March 31st 1836. It was an act incorporating certain persons and their associates " for the production and manufacturing of silk in the county of Nantucket." ( *St.* 1836, *c.* 108. 7 Special Laws, p. 623.)

George L. Gardner was offered as a witness, to prove the organization of the corporation under their charter, and their choice of officers ; it having been first shown that notice had been given to the defendants to produce their records, and that they had not produced them. The witness testified that he was brother of William H. Gardner, deceased, who was one of the members of the Atlantic Silk Company, and owned three fifths of the stock, as appeared in the company's book of records, which the witness had examined ; and that the residue of the stock was owned, one fifth by Samuel H. Jenks, and one fifth by Samuel B. Tuck : That it appeared on said records, that about the 1st of May 1836, the company was organized under their charter, and chose William H. Gardner president, Samuel

B. Tuck treasurer, Samuel H Jenks secretary, and a board
of directors ; and that the respective duties of the officers were
specified in the record.   The witness further said, that by sec-
ietary he meant the same as clerk :   That he had no recollec-
tion of any division of the stock into shares, nor did he remem-
ber whether the amount of stock was agreed upon, on the books
or elsewhere ; nor did he remember the specific duties which
were assigned to the respective officers :   That he was absent
from Nantucket, from the beginning of 1836 until July 1837 ;
that his brother, said William H. Gardner, died while the wit-
ness was absent, and that the corporation did not afterwards act
as such :   That his said brother's papers came into his hands,
as administrator, and among them were sundry papers and ac-
counts of the corporation ; but there were no acceptances or
notes of the company among them ; and he did not remember
to have seen any negotiable paper signed by Samuel B.
Tuck as treasurer, or any acceptance or note of the corpora-
tion, beside the draft in suit :   That he saw the records of the
company in the hands of Samuel H. Jenks, the secretary or
clerk of the company, and that the entries in the books were in
his handwriting.

The signatures to the draft were then proved, and the draft
was read to the jury.

The defendants objected, that it was incumbent on the plain-
tiffs to prove that the defendants had complied with the provis-
ions of the Rev. Sts. c. 38, §§ 4 & 9, and c. 44, § 3.   [These
provisions are set forth in the opinion of the court, post, p. 287.]

The plaintiffs offered a copy of the " Nantucket Inquirer," a
newspaper published by said Samuel H. Jenks, containing an
advertisement for the first meeting of the company, dated April
9th 1836, and signed William H. Gardner, one of the persons
named in the act of incorporation.   This was admitted in evi-
dence, though objected to by the defendants ; and it was
ruled, that it was not incumbent on the plaintiffs, in this case, to
prove that the defendants had complied with the provisions of
the revised statutes above referred to.

The defendants then insisted that it was incumbent on the

plaintiffs to show a specific authority given by the corporation to the treasurer to accept drafts, in order to bind the company. But it was ruled, and the jury were instructed, that it was for the plaintiffs to satisfy the jury that the draft was so accepted as to bind the company, and also that the treasurer had authority for that purpose ; that the best evidence of the fact would be found in the records of the company ; but as they were not in the possession of the plaintiffs, and were not produced by the defendants, it was competent for the jury, if the evidence was believed, and satisfied them in point of fact, to infer, from the evidence offered, and from all the circumstances in the case, that the treasurer was so authorized.

The jury returned a verdict for the plaintiffs, which is to be set aside, and a new trial had, if the instructions or rulings aforesaid were wrong in law ; otherwise, judgment to be éntered on the verdict.

---

The action brought by *Westcott* was for goods sold and delivered, and a bill of particulars was annexed to the writ. The balance claimed was $ 269·50.

In this case, the same evidence was offered as to the legal ex istence of the defendants as a corporation, and the same objections taken, and the same ruling made, as in the previous case of the *Narragansett Bank*.

To prove his case, the plaintiff relied in part, *first*, upon four letters dated, respectively, August 19th, September 29th, and November 29th 1836, and March 20th 1837, written and signed by William H. Gardner, as president of the Atlantic Silk Company, and directed to the plaintiff at Scituate, (Rhode Island,) where he resided ; and *secondly*, upon the testimony of George L. Gardner.

The letters were objected to by the defendants, but were admitted. They were written for the purpose of causing machinery to be made by the plaintiff for the defendants, and contained acknowledgments of its reception at Nantucket. The handwriting of William H. Gardner was proved, and it was also

*proved that he died in* 1837. George L. Gardner testified that he lived at Nantucket ; that he was absent from the island, from the beginning of 1836, to July 1837, and then returned ; that he had been in the factory of the Atlantic Silk Company, and had seen there the same articles of machinery, or articles similar to those, which are charged in the plaintiff's bill ; *that the said* company did not manufacture silk after July 1837 ; and that he had now in his possession four looms which had belonged to them.

The defendants introduced no evidence, but objected, that in order to charge them, it was incumbent on the plaintiff to prove a specific authority to purchase, given by vote to the president, by the corporation. Upon this point the jury were instructed, that the burden was on the plaintiff to satisfy them that the president, as such, had authority, by vote of the corporation, to purchase machinery on their account : That the records of the company were the best evidence of such authority ; but as they had been called for by the plaintiff, and not produced by the defendants, the jury were authorized to infer such authority from other circumstances ; and that the evidence in the case, if it was believed and was sufficient to satisfy their minds of the fact, was competent in law for that purpose. The jury were further instructed, that a subsequent ratification, by the corporation, of the doings of their president, was equivalent to a previous authority ; that to prove such ratification, the burden was upon the plaintiff, and that it was competent for them, in this case, to decide whether or not such ratification had been given, according as the evidence in the case should satisfy their minds ; and that if, from the evidence, they should reasonably doubt whether any authority was originally given by the corporation to the president, to purchase, and whether they ever subsequently ratified the purchase of the machinery, they should find for the defendant.

The verdict was for the plaintiff, and it is to be set aside and a new trial had, or judgment is to be rendered thereon, according to the opinion of the whole court upon the correctness of the above rulings and instructions.

*Coffin*, for the defendants.

*Eliot*, for the plaintiffs.

SHAW, C. J.   The first of these cases was assumpsit on a bill of exchange, drawn on the company at four months' date, and accepted by Samuel B. Tuck, treasurer.   This company was incorporated as a manufacturing corporation by *St.* 1836, *c.* 108. The defendants contended, that in order to recover against the defendant corporation it was incumbent on the plaintiffs to prove that the company had complied with the provisions of the Rev. Sts. *c.* 38, §§ 4, 9, and *c.* 44, § 3, regulating the organization of manufacturing corporations.   These provisions require them to choose a clerk and treasurer ; that the clerk shall be sworn, and shall keep a record of votes ; that the capital stock shall be divided into shares ; that the first meeting shall be called by a prescribed form of notice, &c.   The court are of opinion, that this argument of the defendants proceeds upon an erroneous view of the law ; especially in cases, where a party, who is a stranger, and not presumed to have access to the books, and to have notice of the proceedings of a corporation, is proceeding to recover against a company acting as a corporation.   Many of the requisitions of the statutes referred to are directory to the corporation, its officers and members, and are not conditions precedent to the existence and capacity of the corporation to contract.

But were it necessary to prove the regular organization of the corporation, the objection would come with an ill grace from the defendants, and under the circumstances must be deemed untenable.   It is the duty of such corporations to keep records ; the primary and only regular evidence of their organization is legally presumed to be in their records, and the defendants decline producing those records, on notice, without assigning any reason.   The maxim of law is, that all things shall be presumed to have been rightly and correctly done, until the contrary is proved.   This maxim is stated and explained, and many instances given of its application to corporations, and to acts and doings of their members, officers and agents, in *Bank of U. States* v. *Dandridge*, 12 Wheat. 70.   As the corporation could not proceed lawfully, until duly organized, and as they did proceed to act as a corporation, this presumption has its effect.   The

defendants have the records, which prove such organization, if it took place, and withhold them. This maxim, under these circumstances, would go far to establish the actual and regular organization of the defendant corporation.

But the court are of opinion, that in an action against a corporation, it is not incumbent on the plaintiff to prove that the defendants have complied with the requisitions of the statutes, where they are not in terms, or by necessary or reasonable implication, conditions precedent to their existence, or capacity to do particular acts. It has been held that the existence of a corporation, and of course its organization, may be proved by reputation, and by its actual use, for a length of time, of the powers and privileges of a corporation. *Dillingham* v. *Snow*, 5 Mass. 547. *Stockbridge* v. *West Stockbridge*, 12 Mass. 400. In regard to manufacturing corporations, which are of more recent origin in this Commonwealth, it is in general sufficient to give in evidence the act of incorporation duly authenticated, * and the actual use of the powers and privileges of an incorporated company, under the name designated in the act of incorporation. *Bank of U. States* v. *Dandridge*, 12 Wheat. 64. *Utica Ins. Co.* v. *Tillman*, 1 Wend. 555. *Utica Ins. Co.* v. *Cadwell*, 3 Wend. 296. *Fire Department of New York* v. *Kip*, 10 Wend. 266. These were cases in which the corporation, whose organization was in question, were plaintiffs. The rule applies *à fortiori* to the case of a plaintiff seeking to enforce an obligation against a corporation.

And we think it highly necessary to the purposes of justice, that the law should be so held ; otherwise a company might avail themselves of the powers and privileges of a corporation, without subjecting themselves to its duties and obligations, and might set up their own neglect of duty, or wilful non-compliance with the requisitions of law, to discharge themselves of such obligations. Nor would this be the whole extent of the wrong done by such construction, in regard to manufacturing corpora-

---

* Acts of incorporation are now deemed public acts ; Rev. Sts. *c.* 2, § 3 ; and printed copies of them, published under the authority of the government, are to be admitted as sufficient evidence thereof, in all courts of law, &c. Rev. Sts. *c.* 94, § 58.

tions.  It has been the policy of this Commonwealth to give a qualified remedy against the individual members of manufacturing corporations, as collateral security to their debts and obligations.  But any construction, which would destroy or impair the obligation of the corporation, would, to the same extent, take from creditors their remedy against the members.

As to the evidence in regard to the fact of acting as a corporation, it is stated hereafter in reference to the other case.

In this first case, it was further objected on the part of the defendants, that it was incumbent on the plaintiffs to satisfy the jury that the draft was so accepted as to bind the company, and also that the treasurer had authority for that purpose.  The evidence was left to the jury with instructions which, in our judgment, were sufficiently favorable to the defendants.

It is to be borne in mind, that this corporation was, by its constitution, a trading company ; that, as such, they had authority in their corporate capacity, to make, accept and indorse bills of exchange.  In the absence of all proof to the contrary, it may be presumed that this authority has, by the votes or by-laws of the company, been vested in some officer or agent, to be exercised as the exigencies of the company may require.  The law requires every such company to choose a treasurer, as the title imports, to keep the money and manage the pecuniary concerns of the company ; and if one acts as such treasurer, and is so held out, without protest or remonstrance by the company, the presumption is, that he has been duly elected and authorized to do the acts usually done by a treasurer ; as the cashier of a bank is presumed to have been elected and qualified, by the fact of his openly acting as such.  And this presumption is greatly strengthened by the fact, that the books, which would ordinarily contain the evidence of such votes, are withheld by the defendants. When, therefore, it appears that a manufacturing corporation has gone into operation ; that one of their number has held himself out as treasurer, and acted as such ; it is competent for the jury to presume, and, in the absence of all rebutting proof, it would be their duty to find, that such person had been chosen

treasurer, and, as such, had authority to accept a bill of exchange in behalf of such corporation.

The court are of opinion, therefore, that there is no sufficient ground for setting aside the verdict, in the case in which the Narragansett Bank are plaintiffs.

———————

THE other is an action upon an implied assumpsit, for goods sold and delivered, and services done and performed ; being a claim of payment for machinery for the manufacture of silk, made and furnished by the plaintiff on the request of William H. Gardner, one of the members, and professing to act as the president of the corporation, which consisted, as is shown by the evidence, of three members. It was objected that no positive evidence was offered of a specific authority conferred on Gardner to contract for machinery ; and that it did not necessarily result from his office as president. The judge instructed the jury, that the burden of proof was upon the plaintiff to prove that the president had authority to bind the company by his contracts for machinery ; that, in the absence of the records and books of the company, such authority might be proved by circumstances ; that it would be sufficient to show either a previous authority, or a subsequent ratification by receiving, accepting and using the machinery so delivered by the plaintiff ; and that there was evidence competent and proper for the consideration of the jury, from which they might infer that fact. If there was any evidence proper to go to the jury, we think these instructions were right, and sufficiently favorable to the defendants.

Most of the considerations stated in the former case are applicable to this. The same presumptions arise, from the acts of the company, and the persons and members professing to act and holding themselves out as officers ; and from the unwarrantable withholding of the books of the corporation, after notice to produce them. The act of incorporation being shown, there was evidence tending to prove that the company went into operation, established a factory, and erected machinery ; that the plaintiff furnished machinery, which was afterwards found in their

factory ; that no evidence was shown of an authority, given to any other agent than the president, to order or procure machinery ; and that said Gardner, as such president, did in fact order it, and it was made and delivered in pursuance of such order. We are of opinion that this evidence was properly left to the jury ; that there was evidence to prove both previous authority and subsequent ratification ; and we can perceive no ground on which the verdict for the plaintiff, on this evidence, can be set aside.

An objection was made, that instead of giving notice to the company to produce their books, the plaintiff should have issued a *subpœna duces tecum* to the clerk of the company to bring them in.    But we are of opinion that notice was rightly given to the defendants, and that a *duces tecum* would not have been the regular course.    The corporation have the legal custody and control of their records, and the clerk is their servant, and subject to their orders.    The case cited in support of the objection, *The King* v. *Stoke Golding*, 1 Barn. & Ald. 173, furnishes no authority in support of it ; but, as far as it goes, is an authority the other way.    The appointment of an overseer was there to be proved by the instrument of appointment, or commission, given to him by the parish vestry, and not by a vote.    And the ground, on which it was held that the overseer should have been called to produce the appointment, was, that the regular and primary evidence of the appointment was in the custody of the overseer, and not of the respondent parish.    Had it been otherwise, the notice to the respondent parish would have been sufficient.

*Judgment on the verdicts for the respective plaintiffs.*