Scates, Justice, delivered the opinion of the court: Ejectment by Fitch and Thomas S. Fay, (who dying after the service of the declaration, his widow and heirs at law were made parties,) to recover the possession of “ all that messuage, tenement, and lot of ground situate, lying, and being in the city of Alton, and state of Illinois, and known and designated as parts of lots nos. ten (10) and eleven (11) on the penitentiary plat, as laid off by the inspectors of the penitentiary, being twenty-five feet on State street, in the said city, by fifty feet of equal width on Second street, and the same lot on which stands the brick building partially occupied by the drug store of Marsh, Hankinson & Co.” The plaintiffs claim said premises, first, by virtue of a tax title derived from the town and city of Alton, by virtue of a sale for the taxes of 1837; secondly, the heirs of Fay claim by virtue of a sale on a judgment and execution in favor of Thomas S. Fay, in his life time, against William Gf. Pinekard. The jury found for the defendants; and the court refused a motion for a new trial. To this, as well as the opinions of the court in rejecting and admitting testimony on the part of the plaintiffs and the defendants, there was a bill of exceptions, and an agreement that each party might assign errors. It was further agreed, that if the court erred in any material point affecting the plaintiffs’ right to recover, either by refusing proper testimony on the part of the plaintiffs, or admitting improper testimony on behalf of the defendants, or in refusing a new trial, then a venire de novo should be awarded; otherwise the judgment below to stand. The plaintiffs have assigned seven errors, and the defendants eight; but I deem it unnecessary to set them down, as the facts upon which they arise will be noticed in tracing the history of this cause, and disposing of the numerous points raised and discussed. In the first place, to maintain their title upon the sale [* 76] for taxes by the corporation of Alton, the plaintiffs read in evidence an act of the legislature passed February 6,1833, (Private Acts of 1833, 207,) incorporating the town of Alton, and for the purpose of showing an acceptance of, aud incorporation under said act, by the inhabitants of the town of Alton, the original minutes of the Board of Trustees of Alton, proved by the clerk of the Board, were offered in evidence. The minutes had been transcribed into a book kept by the Board of Trustees. This book, upon enquiry and search amongst the records and files of the corporation and of its officers, could not be found. These minutes were objected to, but admitted by the court. They were properly admitted in evidence. The object was to establish the incorporation of the town under the act of 1833, and the act being read, the original minutes of the Trustees, showing the acceptance of the charter, and their acts under it, are good evidence to establish the fact. I think them of quite as high a grade of evidence as the book into which they had been transcribed. But admitting that they were but secondary, still their introduction was proper, the loss of the book having been shown. Much slighter proof has been received as sufficient to establish the existence of a corporation. Thus, having produced the act of incorporation, proof of ucts by the corporation under it have been held sufficient evidence of the acceptance of the charter, and organization of the corporation. 1 Wend. 555 ; 3 Wend, 296. The minutes and entries made by the officers of a corporation, if it appear that they have been kept in a proper place, and by a proper person, are admissible. See on this point, 1 Wend. 555 ; 6 Wend. 655; 4 Peters’ Gond. R. 714; 4 Peters 349; 1 Strange 93; Angel and Ames on Corp. 290; 3 Wend. 296; 5 Har. and Johns. 123; 9 Cowen 194. It was proved that said Board of Trustees acted under the charter contained in the act of 1833. The plaintiffs then offered to read in evidence an ordinance.of the said board of trustees, providing for the assessment and collection of taxes under the powers granted in their charter of incorporation, which was duly published. Objection was made; but it was admitted by the court. The charter provides “ that the board of trustees shall have power, by ordinance, to levy and collect taxes upon all the real estate within the town, not exceeding the one-half of .one per centum upon the assessed value thereof, except as hereinafter excepted,” etc.; and after enumerating various powers and objects, the charter adds, “and from time to time, to pass such, ordinances, to carry into effect the objects of this act, and the powers hereby granted, as the good of the inhabitants may require; and to impose and appropriate fines and forfeitures, for the breach of any ordinance, and provide for the collection thereof.” (Private Acts of 1833, 207, §5.) The sixth section provides for a special tax for the im- [* 77] pro.vement of the streets, etc.; and the tenth section provides for the redemption of land sold by the authority of the corporation. Under this charter the board of trustees proceeded to ordain and establish, by ordinance, “ that all lots, out lots, and lands lying within the limits of the corporation of Alton, shall be subject to taxation; that one-half of one per cent, shall bo levied annually upon the amount of the assessment list of the same; that it shall be the duty of the assessors, elected immediately after the first Monday in May, in every year, having first been qualified, to proceed to value and assess all such lots, out lots, and lands aforesaid, having no regard to the improvements thereon ; that they shall make complete lists, with a description of said lots and lands, the names of the owners, if known, and the valuation, setting them in separate columns, and make return to the board of trustees within fifteen days; that the clerk of the board of trustees, immediately after such return, shall give notice in some newspaper printed in said town, that said assessment list has been returned, and that the board of trustees will sit on the first Monday of June following, or such other time as they shall appoint, as a court to hear and determine all appeals from said assessments; after the board shall have thus corrected the assessments, the amount of tax shall be carried out in a column for that purpose, and added up by the clerk, and certified by him, and handed to the town collector, who shall be charged with the amount of taxes due thereon. The certificate, under seal, shall be a sufficient authority to the collector to collect the same. Within fifteen days after receiving the said list, the collector shall give notice, for three weeks successively, in some newspaper in Alton, etc., that the taxes for that year are due and payable ; and if those owing taxes neglect or refuse to pay the same, by the first day of October following, the collector shall proceed to advertise such lots, parts of lots, and lands, on which taxes remain due and unpaid, for sale at public auction, giving at least sixty days’ notice of the time and place of such sale, in some newspaper printed in said town, etc., which sales shall be made annually on the last Monday in December. At the time and place, the collector shall proceed to sell so much of the said lots and lands as will bring the taxes and cost due thereon. He shall keep a register of such sales, in a book, in which he shall enter such lots or tracts of land, stating the precise quantity of each lot or piece of land sold, and the amount sold for. He shall give a certificate of purchase to the purchaser; and if not redeemed in two years, the collector then in office shall make a deed to the purchaser, as near as may be, in the form prescribed by law to be given by the auditor in similar cases. He shall seal and acknowledge the same before some justice of the peace, or notary public, of the proper county. Said deed shall vest the [* 78] fee simple of such lots or lands in the purchaser, his h.eirs and assigns. Said deed sháll be evidence of the duties re- 80 quired by this ordinance having been performed, until the contrary shall be proved. The collector shall make out a certified list of such sales, specifying the precise quantity of each lot or piece of land sold, to whom sold, and the amount of the taxes and costs sold for, and the date of sale. The list shall be deposited with the clerk of the board of trustees, and filed in his office. The lots or lands may be redeemed at any time within two years, by paying double the amount of the cost and tax to the purchaser, saving to minors the right of redemption for one year after the youngest comes of age; but any person redeeming shall pay all subsequent taxes, with interest at six per cent.,” etc. It is contended by the defendants, that this ordinance is unconstitutional and void ; that the corporation had no power, under the 20th section of the 8th article of the constitution, to levy such an assessment upon one portion of the land, excluding another portion, to wit, the improvements upon the land. They also insist that the corporation had no power, under the constitution or the charter, to provide for such summary sale of the land for the taxes. The 8th section of the 8th article provides, “ That no freeman shall be, in any manner deprived of his property, or disseized of his freehold, but by the judgment of his peers, or the law of the land.” I am of opinion that it is unnecessary to investigate the question as to the power of the legislature to discriminate amongst the objects of taxation; or its power to levy upon only a portion of one kind of property; as the question may be disposed of under the charter. There is not a doubt in my mind that the corporation exceeded its powers, in declaring that the collector’s deed should be evidence of a compliance with all the prerequisites of the ordinance. The legislature alone possesses the power to make, change, or alter the rules of evidence. It was then the duty of the plaintiffs, to prove every material allegation or fact necessary to show a right of recovery. Claiming under a sale of this land, for taxes due to a corporation, and made by it, it was material to show, not only a power to levy and collect a tax, but that the land was subject to that taxation; that the tax levied was authorized ; that it was due and unpaid; and that the powers granted had been strictly complied with. For the purpose of showing the power to levy this tax, the charter of the corporation was shown to the court, by which the corporation was authorized to “ levy and collect taxes upon all real estate within the town, not exceeding one-half of one per centum upon the assessed value, thereof.” Here is a power conferred to levy a tax; but as all fixed and permanent [* 79] buildings and improvements upon land are a part of the land, in' assessing the value, it is necessary to estimate the whole, according to this charter. The board of trustees seemed to think themselves empowered to.pass ordinances discriminating as to the parts and distinguishable portions of the land, under another ■clause, authorizing the passage of such ordinances, from time to time, as to carry into effect the objects of the charter. This they had no power to do. The legislature had already designated the estate upon which taxes might be assessed. Therefore it was not necessaiy, in the exercise of their powers, to specify what estate should be taxed. The legislature had fixed the per cent.; and the mode of levying that per cent, was upon the assessed value, and that was to be made upon all the real estate within the corporation. It was not necessary then to pass this ordinance, in carrying into effect the powers granted. Much less could the board change the objects of taxation. The ordinance, therefore, in this respect, is in violation of the corporation charter, and void. It is not necessary to go into an examination of the power of the legislatme to discriminate amongst the objects of taxation, in order to determine this case; and the court are therefore disinclined to discuss a question so vital to the validity of many titles in this state, in a case where other questions supersede its necessity. Neither does it become necessary to determine whether the legislature can authorize this corporation to levy an additional tax above the state and county tax, without making it general to the whole state. This may be strictly a private corporation for most of ,its objects; and yet it seems to me to be invested with some powers that so nearly resemble and concern the police administration of justice, as to make it a public corporation as to those objects. The corporation must strictly pursue the law creating it, or giving it power to act. 2 Scam. 187; 2 Kent’s Com. 298. A power to sell property for taxes is a naked power, and must be strictly pursued. Every thing required to be done must be done; and those claiming under a tax sale will be required to make strict proof that every thing was done required by the statute ; that the land was liable to taxation, was assessed, and that the taxes were due and unpaid. 4 Peters 349; 13 Peters 328 ; 14 Mass. 177; 2 Peter’s Cond. R. 151; 4 Peter’s Cond. R. 395; 5 Wheat. 116; 6 Wheat. 119; 1 Cooke 360-5. The'assessors for the said town were regularly appointed, and made their assessment, valuation, and return of the property within the corporation. The premises in question were parts of lots ten (10) and eleven (11) on the penitentiary plat, The return was in this form: [[Image here]] By the ordinance, notice was required to be given by the clerk, that the board of trustees would sit as a court of appeal, to hear all complaints as to the assessment. The plaintiffs offered in evidence a copy of the Alton Spectator, of dates of May 27, and June 1st and 8th, 1837, containing the notice, which was that the trustees .would sit on the 5th and 19th of June next, as such court of appeal. There was no other date to the notice than the words “ May 25. 4t.” This was objected to, but admitted. The parties agreed that a clear title existed in the defendant Pinckard; that S. C. Pierce was collector, and that the tax list was handed over to him, for the collection of the taxes of the year 1837. It was also admitted, that prior to the year 1837, Isaac Negus and George Robbins, then being owners of the said lots in fee, had subdivided them in the following manner: [[Image here]] but no record of such subdivision was ever made. That S. W. Robbins owned subdivision lot No. 1, in the year 1837, and paid the collector, prior to the day of sale, $14, which was received as the tax due for his proportion of lots 10 and 11, and discharged that proportion as lot No. 1; that Hankinson likewise being owner of subdivision No. 2, paid in like manner $16.71; both deriving title from Negus and Robbins, who made the subdivision of the lots. It appeared, from the tax booh, that the remainder of the tax for that year on lots 10 and 11 was unpaid, rs oil Pinokard admitted that he was owner of subdivision no. L J 3, and did not pay any tax on it for that year. The collector was required, by ordinance, to give notice that the taxes were due, and.if not paid, by the 1st of October, he would proceed to advertise and sell. He was also required, if not paid by that time, to advertise and sell. The plaintiffs offered copies of the Alton Spectator to prove the giving of the first notióe, which were published on the 27th of July, and 10th, 17th, 24th, and 31st of August, 1837. This notice bore date “Alton, July 6, 1836.” In connection with, and explanatory of this notice, they offered to prove the like notices of taxes being due, published in the Alton Spectator for 1836, and that the notice was intended for 1837, and the date was a mistake; but the court excluded the whole of this testimony. The object of giving notice, I think would be completely defeated, if such evidence could be admitted to correct the mistake, unless the party would bring that explanation home to each person in interest; and also show that the public were also apprised of the mistake, and did attend the sale, so as to ensure fair competition at the biddings. Sales might be conducted under such defective notice, and the party be able to show it to be a mistake, and what the true intention was, still the public might not be apprised, the purchaser might, as is said by the court in Ohio, (2 Ohio 233,) obtain acres for cents, without competition, the tax payer have his land sacrificed for a trifle, and yet the purchaser sustain his purchase by showing what the collector intended, or that the printer made a mistake. There is too much uncertainty; the mischiefs would be irreparable. The object is to ensure fair competition, for the benefit of all concerned, and if the notice is so defective as not to give the .proper information, the sale will be void. 2 Ohio 232; 4 Peters :360; 5 Ohio 458. This secret information or intent of the publication cannot aid it. I think it unnecessary to pursue further the questions arising ■.under this tax sale, as I think the corporation exceeded its powers in passing this ordinance, changing so vitally the law of its ■ charter, and could not cutoff enquiry by its rule of evidence. But even admitting the legality of the ordinances, no such notices were given, as required by them to authorize a sale and consummate a title. The plaintiffs then proved that Thomas S. Fay, the ancestor of part of the plaintiffs, recovered a judgment against the defendant Pinckard, in the Madison circuit court, at the May term, 1837, .for $118.03, and cost; that an execution issued, which was levied, ■which levy was endorsed as follows: “ Levied this execution, May 28th, 183-7, on a certain lot situated on the angle of Second and State streets, in the town of Alton, and advertised to be sold J uly 29th, 1837. N. Bückmaster, Shff. M. C.” that the same was appraised at $8000, and sold for the sum [* 82] of $136.54, to said Fay, at public vendue; and upon the sale the sheriff executed the following certificate of purchase: “ Thomas S. Fay v. William G. Pinckard. This will certify that by virtue of an execution in this cause out of the Madison circuit court, numbered 2171, I have this day sold to Thomas S. Fay, a certain lot situated on the angle of State and Second streets, on which stands a three story brick house, for the sum of one hundred and thirty-six dollars and fifty-four cents, he being the highest and best bidder therefor; will be entitled to a deed for the same, after the expiration of fifteen months from this date, unless redeemed according to law. July 29, 1837. N. Bückmaster, Shff. M. C.” They also read in evidence a deed from John Adams, sheriff of the said county, and successor of N. Buckmaster, executed on the 4th day of November, 1838, duly acknowledged on the 24th, and recorded on the 26th of November, 1838, in which the land is described as, “beginning at the corner of Second and State streets, and thence running north, thirty-five feet, along the west side of State street, thence west fifty feet, parallel with Second street; thence south, twenty-five feet, parallel with State street, to the north side of Second street; thence along the north line of Second street, to the place of beginning, being the same lot on which the said Pinckard is now erecting a brick store;” as described in a certain mortgage from the said Pinckard to Joseph Duncan, dated the 5th day of January, 1837. The plaintiffs also identified the premises described in the deed, with those claimed in the declaration. To all this the defendants excepted. I will not notice the subsequent proceedings, and the manner in which the question has been raised upon this evidence; nor the mortgage introduced by the defendants, and the points made upon it. The mortgagee is not before the court; and as the questions upon the mortgage are not necessary to the decision of this case, I will forbear any remarks upon it, in as much as he cannot be heard. The questions presented are upon the certainty of description of the realty levied upon, and the liability of the equity of redemption to execution. The earliest doctrine in England, settled that the whole legal estate was in the mortgagee, and courts of law were not disposed to notice the interest of the mortgagor. 2 Wils. 86; 1 Powell on Mort. 251, note f. But equity soon interposed to protect the interest of the mortgagor, by treating the mortgage as a mere security for the payment of the money loaned or secured, and the mortgagor as the real owner of the estate. See 1 Powell on Mort. 251, notes, e, f, 252, note g, et seq., for the nature of this estate now. This view of the subject is based upon the justice of the [*' 83] case, and carries into effect the true intent of the parties; and the strictness of the law has yielded to the principles of justice and equity. The mortgagor is now regarded as the real owner of the land, for all beneficial purposes, subject to the charge of the repayment of the money. . The statute, (Gale’s Stat. 389, § 1; R. L. 370,) has subjected the goods and chattels, lands, tenements, and' real estate, to the payment of debt. The doctrine now held in the United States, in regard to the estate of the mortgagor, is to treat him as the real owner of the estate, for all beneficial purposes, subject only to the rights and incumbrance of the mortgagee. I am of opinion that the equity of redemption is liable to execution for debt; the equity of redemption would pass to the purchaser at the execution sale, subject to the same rights of redemption as the land itself, and also to all the rights of the mortgagee. 3 Johns. Ch. R. 277; 1 Caines’ Cas. 46; 18 Johns. 7 ; see also 1 Cowen 508 ; 1 Powell on Mort. 307, note g ; contra, 1 Ohio 314. In New York an equity of redemption is regarded as real estate. 7 Johns. 277. It is objected that the levy and certificate of purchase are too uncertain to authorize a sale. The debtor, creditor, and purchaser are all interested in this respect. The debtor and creditor are interested ; the former, that the public may be notified, with such certainty of the description of the property, as will enable persons wishing to bid to form a correct estimate of its value, so that his estate may not be sacrificed; the latter, that it may sell for enough to satisfy his debt; and the purchaser, that he may be enabled to identify his purchase, and maintain or recover the possession, and defend his title. The levy was made upon “ a certain lot situated on the angle of State and Second streets, in the town of Alton and it appears by the certificate, that the sheriff sold “a certain lot situated on the angle of State and Second streets, on which stands a three story brick house.” Can any one identify this property from either of these descriptions ? There may be four angles on State and Second streets; and if so, on which one of the four was this levy made ? Another difficulty might arise, and which is very strongly illustrated in this case, by the plat of the subdivisions of lots ten (10) and eleven (11). Subdivision no. three (3) is shown upon that plat to belong to the defendant Pinckard ; so much of this subdivision as lies in lot no. ten (10), lies on one angle of the said streets, but the other part of the subdivision does not, although the whole subdivision belongs to the defendant Pinckard, and this ejectment is brought for the whole. Was the levy made upon the whole, or only half of the subdivision lying on that angle, supposing it to have been upon that angle of those streets ? Could the public, from such a levy, or advertisement pur- [* 84] suant to it, ascertain what property was to be offered, so as to estimate it, and determine how much to bid ? I am of opinion that it is too uncertain to enable any one to value it so as to bid, or to find and identify it. The fact that it was appraised at $8,000, and sold for $136.54, is a strong circumstance, showing that it was too indefinite to enable bidders to make offers. The certificate of purchase, regarding it alone, and not in connection with the levy, is still more uncertain. It adds that there is a brick house upon it, three stories high ; but it does not show where the lot is situated, whether it be on State and Second streets in Alton, or elsewhere. But taking them both together, still the same uncertainty exists. I therefore think the sale void for uncertainty. Sheldon v. Soper, 14 Johns. 652; 4 Peters, 349. 'Ihe deed cannot remedy it. The deed should be made for the property levied upon and sold. The grantor in this deed, who was the successor of the sheriff making the levy and sale, seemed to be aware of this uncertainty, if he conveyed the same premises. For he has introduced altogether a different description into the deed; so different that it does not appear to be the same premises sold on the execution. He had no right to convey any other. The deed, therefore, cannot aid the uncertainty. We are of the opinion that this whole proceeding is void for uncertainty; and that the judgment below be affirmed with costs. Teeat and Douglass, Justices, dissented. Judgment affirmed.