GIUSEPPE WEBBER, Appellant, *v.* AMERICAN UNION BANK (Formerly Known as JOHN NEMETH STATE BANK), Respondent.

Supreme Court, Appellate Term, First Department, October 9, 1926.

Banks and banking — action to recover deposit — deposit was made in special deposit account and listed as deposit of kronen — State bank cannot take foreign money on deposit — Banking Law, §§ 2, 112 and 142, and Penal Law, § 298, applied — deposit considered as made in American money and plaintiff is entitled to recover with interest.

The plaintiff, who made a deposit with the defendant's predecessor, a State bank, of American money in a special deposit account, which was listed on the account as a deposit in kronen, is entitled to recover from the defendant the amount of American money deposited, with interest, for, under sections 2, 112 and 142 of the Banking Law, and section 298 of the Penal Law, the defendant could not legally accept the deposit in foreign money. Therefore, the deposit, although listed as made in kronen, will be considered as having been made in American money.

APPEAL by plaintiff from a judgment of the Municipal Court, Borough of Manhattan, Third District, dismissing the complaint without prejudice, and from an order denying the motion for a new trial.

*Frank H. Richmond,* for the appellant.

*Boskey, Schiller, Marvin & Serling* [*Max Shindler* of counsel], for the respondent.

DELEHANTY, J.  On March 9, 1917, the John Nemeth State Bank was a banking corporation existing under the laws of the State of New York.  It was at such time soliciting from the public the deposit of kronen and marks, and the opening of accounts therefor with it in the manner and upon the conditions hereinafter stated.  On or about March 9, 1917, the plaintiff applied to said bank to open a kronen account and at that time there was presented to him by said bank an application blank which as filled out was in the following words:

" John Nemeth State Bank, 395 Broadway.  To use savings bank book for kronen, please use this application.  NAME ON WHICH THE SAVINGS BOOK IS MADE OUT — Giuseppe Webber in trust for Rosa Webber, born in Paris, address 352 Seventh Avenue, New York.  YEAR OF BIRTH AND PLACE August 8, 1877, Masido Vigo

"AMOUNT OF DEPOSIT IN KRONEN                3000.
                " PLEASE NOTE.

" All savings deposits in the John Nemeth State Bank are under all circumstances safe."

This application blank was signed at the end thereof by the defendant.  The defendant thereupon gave the said bank $360, and thereupon received from the bank a pass book on the front cover of which was printed " John Nemeth State Bank 395 Broadway New York  Special Deposit Book No. 1649 for Giuseppe Webber in trust for Rosa Webber."  On the inside front cover were printed certain provisions as follows:

" Conditions covering special Kronen and Mark deposits.

1) Kronen   Deposits in any amount from 100 kronen upward
   Mark     bear interest at the rate of 3% per annum from the
            date of deposit until the date of withdrawal.   Interest
            will be paid or credited to the capital amount on
            the 10th day of each January and July.

2) Kronen   deposits may be withdrawn upon demand payable
   Mark     in dollars at the prevailing rate of exchange for
            Kronen or Marks.

3) Kronen Mark deposits may be withdrawn upon demand and amount withdrawn will be transmitted abroad in full without additional charge.

4) Kronen Mark deposits may be withdrawn upon demand and amounts withdrawn will be exchanged in full for German or Austro-Hungarian specie. The John Nemeth State Bank reserves to itself the right to demand twenty days' previous notice from the depositor for withdrawal of funds to be converted in this manner. This privilege will be extended to the depositor upon the regular resumption of such Trans-Atlantic service as will permit of the importation of German and Austro-Hungarian currency.

5) Kronen Mark deposits may be made either in person or by mail.

6) Kronen Mark special deposit bank book need not accompany remittance, but pass book should be sent in at least twice a year for the entering of accrued interest and accumulated deposits.

7) Kronen Mark deposits may be withdrawn by the depositor either in person or by mail upon presentation of the pass book in conformity with regulations as stipulated in this pass book.

8) Remember the number of your bank book.

9) The depositor must immediately notify the John Nemeth State Bank in the event of having lost the pass book so as to properly protect the owner's interests.

10) Keep this book in a safe place.''

On the inside of the book was indorsed as date of deposit March 9, 1917, Deposit Kronen 3,000.

The action was brought, the pleadings being oral, to recover $360 specially deposited with the defendant on its contract to return on demand in and for dollars, or in kronen specie. At the trial the amount sought to be recovered was increased to $840. The plaintiff claimed at the trial that he was entitled to recover the $360 which he had deposited, or the kronen in specie or the exchange value of the kronen specie, to wit, $840. His claim was based upon the 2d and 4th clauses of the conditions indorsed on the inside of the cover of the book. The defendant claims that the kronen it was obligated to pay on demand were not the coin kronen but the paper kronen. The evidence on the trial is sufficient to support a judgment for $360 as money had and received by

the defendant regardless of all other questions raised in the case, if as the plaintiff claims the agreement made with the bank to pay the plaintiff either in dollars at the prevailing rate of exchange for kronen, or in kronen, was *ultra vires*, which question was argued on this appeal.

The Nemeth Bank is now known as the American Union Bank, the present defendant in this action. The defendant claims that the transaction was a deposit by the plaintiff of 3,000 kronen; that it was a special deposit and that the title to said kronen was and always has been in the plaintiff. I am unable to agree with such proposition. The plaintiff when he applied to the Nemeth Bank for a kronen deposit gave such bank $360 for the purpose of opening a kronen account with said bank. The plaintiff deposited no kronen and bought no kronen. The bank gave him a bank book in which was entered a credit for 3,000 kronen. Said kronen were never delivered to the plaintiff, nor were the specific 3,000 kronen set aside for the plaintiff. Under the arrangements made by the plaintiff with the Nemeth Bank the plaintiff relied entirely upon the financial responsibility of the Nemeth Bank to comply with the agreement. The relation between the plaintiff and the Nemeth Bank was that of debtor and creditor. The $360 given by the plaintiff on March 8, 1917, became a part of the bank's general funds for which the bank became indebted to the plaintiff and which he was entitled to receive upon demand. (*Baldwin's Bank* v. *Smith*, 215 N. Y. 76–82.) It matters little what the defendant gave the plaintiff credit for — whether it was kronen, marks, or wheat. The liability of the bank was to return exactly what the plaintiff had given it, nothing more and nothing less. There was no special deposit of any moneys or kronen by plaintiff with the defendant as a bailment or otherwise. The defendant did not become a depository of the kronen and did not undertake to keep them separate and apart from any other kronen they might have on deposit and to pay over the identical kronen to the plaintiff. It was not the intention of the defendant that the transaction should be a bailment as is evidenced by the fact that under clause 1 of the conditions covering the deposit the kronen were to bear interest at the rate of three per cent per annum where the kronen were from 100 upwards. In other words, as far as the defendant was concerned, it was simply a matter of bookkeeping, and instead of crediting the $360 to the plaintiff's account, it credited 3,000 kronen, which if it did not have on hand at the time of the demand by plaintiff, it would have been obliged to buy in the market at the current rate of exchange. However, it is incredible that the defendant ever intended to specifically set

aside these particular kronen and thus prevent their use in their business which they were carrying on. As said by Professor (now Mr. Justice) STONE in his article in the Columbia Law Review (Vol. 21, p. 512): " To produce an adequate return on invested capital the banker must add to his financial resources by deposits and other funds entrusted to his care by customers. To secure the desired profit the banker must be free to use the funds entrusted to him as his own in making loans, retaining the profits or interest received from such transactions as his own and this is legally permissible only if the banker's legal relation to the depositor is that of debtor for deposits, either without obligation to pay interest or with an obligation to pay interest at a lower rate than the current bank rate.

" No bank could maintain itself economically if it were either a bailee or a fiduciary or trustee of funds entrusted to its care as, in the first case, it could not use them in its business and, in the others, it could not use them for its own benefit and in its current banking transactions."

Foreign money in this country on its barter and sale is generally treated as a commodity though it may be treated as money having a monetary value fixed by the exchange value. Under the Banking Law of the State (Laws of 1914, chap. 369), section 2, a bank is defined in substance as one authorized " * * * to receive deposits of money and commercial paper * * * and to buy and sell gold and silver bullion, foreign coins or bills of exchange."

Money, as referred to in said section, refers to the lawful money of the United States, the currency or circulating medium of this country. ( *United States* v. *Smith,* 152 Fed. 542.) Under the laws of this State the Nemeth Bank had no legal right to receive on an account deposit, moneys other than the currency or circulating medium of this country. Banks of this State are prohibited from receiving, paying out or putting in circulation any moneys or currency as moneys except those payable in United States money. (Banking Law, § 142; Penal Law, § 298, as amd. by Laws of 1910, chap. 398.) Moreover, general deposit accounts in foreign money are prohibited by section 112 of the Banking Law* of the State. Such section provides that every bank is required to maintain total reserves against its aggregate demand deposits as follows: " * * * at least one-half of the reserves on hand shall consist of gold, gold bullion, gold coin, United States gold certificates or United States notes; and the remainder shall consist of any form

---

* Since amd. by Laws of 1917, chap. 579, Laws of 1918, chap. 92, and Laws of 1919, chap. 35.— [REP.

of currency, other than federal reserve notes, authorized by the laws of the United States."

In view of such provision it was and is a physical impossibility for the defendant to comply therewith and maintain a reserve against deposits in kronen. No foreign gold or silver coins are legal tender in payment of debts. (U. S. Comp. Stat. Anno. § 6571.) The dollar is the standard unit of value in this country. (Id. § 6480.) Foreign money is received by the United States government for the payment of duties (Id. § 6538) upon a valuation fixed as provided by law. (Id. §§ 6536, 6540.) Foreign coin, when received by the United States government, however, is not put in circulation but is recoined as provided by section 6538. There are various provisions in such statutes fixing independently the value of the coin of certain countries. (Id. §§ 6536, 6537, 6539.) Section 4775 provides what moneys are receivable by the United States for public lands. Section 9768 provides that National banks shall not pay out or put in circulation notes which are not receivable in par on deposit. Section 6289 provides for a tax of ten per cent on all notes of individual or State banks paid out or put in circulation by said bank. This latter provision was made for the purpose of driving such notes out of circulation and for the purpose of sustaining the general acts of Congress providing a currency for the whole country and restraining the circulation of money of any foreign government. (*Legal Tender Case*, 110 U. S. 421, 446, 448.)

A bank, by the very nature of the business for which it is incorporated, differs entirely from the ordinary business corporation. In the case of *Nassau Bank* v. *Jones* (95 N. Y. 115, 121) the court, referring to the Banking Laws of 1838, said: " The Legislature intended by the act in question to inaugurate in this State an entirely new system of banking, and thereby undertook to provide for the establishment of moneyed corporations which should furnish to the public a safe and reliable circulating medium for the transaction of its business, and secure and solvent depositaries for the custody of such moneys as were needed for current use by the business public. * * * The solvency of these institutions was guarded by special provisions and limitations in the act authorizing their incorporation, and has ever since been the object of sedulous care, both on the part of the Legislature and of the courts. * * * The language employed in the act defines their power and duties, and excludes by necessary implication a capacity to carry on any other business than that of banking, and the adoption of any other methods for the prosecution of such business than those specially pointed out by the statute."

Moreover, the account in question was not a stable account but a speculative account.   If the kronen had depreciated in value, as they did at the time of the demand, the plaintiff would have been entitled to receive approximately four cents for the $360 which he had given the bank at the time he opened the account. If the kronen had advanced in value at the time of the demand, say to the value of $1,000, the bank would have been obligated either to pay to the plaintiff kronen which were of that value or upon demand $1,000 in United States money.   Many transactions like that based upon the rise in value of the kronen might have materially impaired the capital of the bank.   There was no means of ascertaining from day to day or even from hour to hour during the time that the account continued exactly what amount of money the plaintiff had on deposit, it depending entirely upon the exchange value of the kronen at the time the demand was made for payment by the plaintiff.   A bank cannot speculate with its depositors' money.   When the bank received the $360 it was enriched to that amount.   It gave the plaintiff nothing in return and has not given him anything up to the present time, but is willing to pay him four cents or give him 3,000 kronen which then had really no value in the country in which it was the measure of value and none beyond the four cents in this country.

Not only is the receiving of foreign money on demand deposits and the paying out of such currency upon demand prohibited by section 2 of the Banking Law of this State, but the same is against public policy and the general policy of the United States and State Banking Laws.   Such prohibition, however, is directed against the bank violating the provisions of the Banking Law, and as the contract between the plaintiff and defendant was in violation thereof, the plaintiff would be entitled to recover from the defendant the sum of $360 originally deposited as money had and received with interest from the date of the deposit.   (*White* v. *President, etc., Franklin Bank*, 39 Mass. 181; *Atlas Bank* v. *Nahant Bank*, 44 id. 581, 585.)

In view of the foregoing, the judgment should be reversed, with $30 costs, and judgment directed in favor of the plaintiff for the sum of $360, with interest from May 9, 1917, and costs.

All concur; present, BIJUR, DELEHANTY and WAGNER, JJ.