GUISEPPE WEBBER, Respondent, v. AMERICAN UNION BANK (Formerly Known as JOHN NEMETH STATE BANK), Appellant.

First Department, June 3, 1927.

Banks and banking — foreign exchange — action to recover amount paid to defendant as "deposit"— defendant issued special deposit book showing deposit of 3,000 kronen — while payment was in form of deposit, transaction is construed as sale of kronen for future delivery — said transaction was not deposit of foreign money in violation of Banking Law, §§ 112 and 142, and Penal Law, § 298 — bank has right to sell foreign exchange for future delivery — provision in deposit book for exchange in full for specie does not give plaintiff right to equivalent of 3,000 gold kronen — said construction is unreasonable — no error in excluding evidence that supposed agent of defendant stated that bank book was as good as gold.

This is an action to recover $360 alleged to have been "deposited" in the defendant bank in 1917. At the time of the alleged deposit the bank issued a special deposit book showing a deposit of 3,000 kronen. The bank book contained several printed conditions relative to the withdrawal of kronen. While the payment was made in the form of an alleged deposit, the transaction is construed to be a purchase of kronen for future delivery.

It seems, that the transaction did not amount to a deposit of foreign money in violation of sections 112 and 142 of the Banking Law and section 298 of the Penal Law.

The defendant bank had the right to sell foreign exchange for future delivery.

The contention by the plaintiff that he should be allowed to recover not only the $360 paid the defendant but also $247.50 additional, which contention is based on the theory that he was entitled to Austrian gold kronen under a condition in the bank book giving him the right to withdraw his deposit of 3,000 kronen in full in specie, cannot be sustained. Such a construction of the transaction would be unreasonable, for it would have given the plaintiff the right to with-

draw the equivalent in Austrian specie of $607.50 immediately after the payment to the defendant of $360.

No error was committed by the court in rejecting certain testimony to the effect that a supposed agent of the bank stated to the plaintiff that the bank book was as good as gold, for it does not appear who the alleged agent was or what his relation was to the defendant bank. Moreover, the alleged statements were made subsequent to the consummation of the contract. Furthermore, the action was not brought on the theory that the plaintiff had been fraudulently induced to enter into the agreement.

APPEAL by the defendant, American Union Bank, from an order and determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 8th day of October, 1926, reversing a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Third District, in favor of the defendant, and directing judgment in favor of the plaintiff.

*Charles C. Pearce* of counsel [*Boskey, Schiller, Marvin & Serling,* attorneys], for the appellant.

*Frank H. Richmond,* for the respondent.

*Joseph M. Hartfield* of counsel [*Chester Bordeau* with him on the brief; *White & Case,* attorneys], for Bankers Trust Company and New York Trust Company, *amici curiæ.*

*Hersey Egginton* of counsel [*Douglas R. Gray* with him on the brief; *Larkin, Rathbone & Perry,* attorneys], for Central Union Trust Company of New York, *amicus curiæ.*

*Ralph M. Carson* of counsel [*William C. Cannon* with him on the brief; *Davis, Polk, Wardwell, Gardiner & Reed,* attorneys], for Guaranty Trust Company of New York, *amicus curiæ.*

FINCH, J.   On March 9, 1917, the plaintiff, on a form furnished by the defendant, submitted to the defendant the following application, accompanied by a payment of $360.

" John Nemeth State Bank, 395 Broadway.   To use savings bank book for kronen, please use this application.   Name on which the savings book is made out — Guiseppe Webber in trust for Rosa Webber, born in Paris, address 352 Seventh Avenue, New York.   Year of Birth and Place — August 8, 1877, Masidi Vigo.   Amount of Deposit in Kronen — 3000.   Please Note.   All savings deposits in the John Nemeth State Bank are under all circumstances safe."

In return the defendant delivered to the plaintiff a so-called " Special Deposit Book " showing a deposit of 3,000 kronen, which was at that date exchange equivalent of $360.   Said book contained the following conditions:

" Conditions governing special Kronen and Mark deposits.

1.) Kronen
Mark
deposits in any amount from 100 kronen upward, bear interest at the rate of 3% per annum from the date of deposit to the date of withdrawal.  Interest will be paid or credited to the capital amount on the 10th day of each January and July.

2.) Kronen
Mark
deposits may be withdrawn on demand payable in dollars at the prevailing rate of exchange for Kronen or Marks

3.) Kronen
Mark
deposits may be withdrawn upon demand and amount withdrawn may be transmitted abroad in full without additional charge.

4.) Kronen
Mark
deposits may be withdrawn upon demand and amount withdrawn will be exchanged in full for German or Austro-Hungarian specie.  The John Nemeth State Bank reserves to itself the right to demand twenty days previous notice from the depositor for withdrawal of funds to be converted in this manner.  This privilege will be extended to the depositor upon the regular resumption of such Trans-Atlantic service as will permit of the importation of German and Austro-Hungarian currency.

5.) Kronen
Mark
deposits may be made either in person or by mail.

6.) Kronen
Mark
special deposit bank book need not accompany remittance, but pass book should be sent in at least twice a year for the entering of accrued interest and accumulated deposits.

7.) Kronen
Mark
deposits may be withdrawn by the depositor either in person or by mail upon presentation of the pass book in conformity with regulations as stipulated in this pass book.

8.) Remember the number of your bank book.

9.) The depositor must immediately notify the John Nemeth State Bank in the event of having lost the pass book so as to properly protect the owner's interests.

10.) Keep this book in a safe place."

On August 19, 1921, the plaintiff demanded of the defendant the return of the $360. At the time of the demand the value of 3,000 paper kronen was but four cents. The defendant offered the plaintiff this amount or, in lieu thereof, 3,000 paper kronen. The plaintiff then instituted this action in the Municipal Court to recover the sum of $360. On the trial the plaintiff's demand was increased to the sum of $840, the value of 3,000 specie kronen. The Municipal Court gave judgment in favor of the defendant, dismissing the complaint upon the ground that the plaintiff was bound by the conditions printed in the book and was entitled thereunder to the exchange value of 3,000 paper kronen at the date of his demand. The Appellate Term (128 Misc. 123), on the other hand, held the transaction to be an agreement on the part of the bank to accept 3,000 kronen on deposit and to pay the same to the plaintiff on demand, further holding such agreement to be in· violation of the Banking Law in so far as it prohibits banks from receiving foreign moneys on deposit and from circulating foreign moneys. The Appellate Term had, therefore, held that the transaction was *ultra vires* on the part of the bank and void, and hence the plaintiff was entitled to recover the $360 as for moneys had and received.

The controversy thus turns upon the character of the transaction between the parties to this action. As we construe the terms of the agreement appearing in the book delivered to the plaintiff in conjunction with the undisputed facts in the record, the transaction was not a deposit of kronen, but was a purchase by the plaintiff of foreign exchange to be delivered upon demand.

Despite the misleading use of the word " deposit," we think the transaction should be judged by its main attribute and not by the effect of an incident. What the plaintiff did was not to bring foreign money to this bank for deposit but to pay to the bank $360 with which he bought 3,000 paper kronen and received evidence which would entitle him to demand this amount in paper kronen at any time, together with certain optional privileges. It cannot be said, therefore, that the plaintiff deposited paper kronen or that the whole transaction was other than a purchase of foreign exchange payable upon demand. Considering the matter from another viewpoint, the same result is reached. Assume that deposits as such in foreign currency are forbidden and that the facts in the case might be construed to be a sale of foreign exchange payable on demand; or, by placing undue emphasis upon the effect of the incidental right to receive foreign money upon demand and ignoring the purchase of the foreign money with the American money (which is the main transaction here involved), still, under a familiar prin-

7

ciple, such a contract, in the absence of some clear prohibited result, should, if possible, receive a construction which would regard it as the lawful transaction rather than the unlawful one. As was said by Mr. Justice WOODS in *Hobbs* v. *McLean* (117 U. S. 567, 576): " For it is a rule of interpretation that, where a contract is fairly open to two constructions, by one of which it would be lawful and the other unlawful, the former must be adopted."

The learned Appellate Term was of the opinion that, inasmuch as the defendant bank sold paper kronen for future delivery upon demand instead of immediate delivery, this transaction should be considered merely as a deposit account of foreign currency. Construing the transaction, therefore, as a deposit of foreign currency, the Appellate Term, as noted, then held the transaction to be in violation of sections 112 and 142 of the Banking Law and section ·298 of the Penal Law. As we, on the other hand, for the reasons above stated, are construing the transaction as a sale of foreign currency for future delivery upon demand, it is unnecessary for us to consider whether a deposit in foreign currency and the issuance of a non-negotiable bank book therefor would violate the Banking Law. It would seem, however, that section 142 of the Banking Law and section 298 of the Penal Law (as amd. by Laws of 1910, chap. 398) are both designed to prevent the circulation of foreign currency as legal tender, and hence that the issuance of a non-negotiable bank book would not come within the prohibition of these sections. Section 112 of the Banking Law* deals only with required reserves, and with these we are not now concerned.

The right of banks to purchase and sell foreign exchange for immediate or future delivery has not heretofore been questioned. They are, by the Banking Law, specifically given the broadest powers to carry on such business. (Banking Law, §§ 2, 106,† 185.) Transactions in foreign exchange in various aspects have on numerous occasions also received the sanction of the courts. (*Stern* v. *Barrett*, 235 N. Y. 613; *Safian* v. *Irving National Bank*, 236 id. 513; *Gravenhorst* v. *Zimmerman*, Id. 22.) No reason has been shown why such rights should now be restricted so as to forbid a sale of foreign exchange for future delivery either in this country or abroad. If such reason should exist, it is a matter for action by the Legislature or the Superintendent of Banks.

The plaintiff urges that not only should he be allowed to recover the purchase price of the 3,000 kronen, namely, $360, with interest

---

* Since amd. by Laws of 1917, chap. 579; Laws of 1918, chap. 92; Laws of 1919, chap. 35, and Laws of 1927, chap. 44.— [REP.

† Since amd. by Laws of 1918, chap. 98; Laws of 1919, chap. 159; Laws of 1921, chap. 242, and Laws of 1926, chap. 331.— [REP.

from the time of the deposit, but also $247.50 additional, upon the ground that under one of the optional privileges noted in his special deposit book he has the right to withdraw his deposit of 3,000 kronen and exchange the same in full for German or Austro-Hungarian specie. The plaintiff asserts that the Austrian gold kronen has remained practically stable at twenty and one-quarter cents, and hence that the value of the 3,000 kronen in gold Austrian specie is $607.50. If under the agreement the plaintiff was entitled to the return of 3,000 specie kronen, he would thus, immediately after the contract was entered into, have been entitled to demand the equivalent of $247.50 more than he had deposited. It would be most unreasonable and contrary to all human experience to suppose that it was the intention of the parties that the plaintiff should acquire the right, and the defendant the obligation, to exchange $360 for the equivalent of $607.50. It is urged that the use of the word " specie " in the fourth condition of the book delivered to the plaintiff, renders possible such a construction of the contract. Any ambiguity as to the particular meaning of this word, however, disappears in the light of the aforesaid facts, under the rule of construction that an ambiguous transaction must be given a reasonable, rather than an unreasonable, interpretation. As was said by Judge MARTIN in *Gillet* v. *Bank of America* (160 N. Y. 549, 555): " In the construction of written contracts it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion and apparent object of the parties, to determine the meaning and intent of the language employed. * * * Contracts are not to be interpreted by giving a strict and rigid meaning to general words or expressions without regard to the surrounding circumstances or the apparent purpose which the parties sought to accomplish. * * * Where there is uncertainty or doubt as to the meaning of words or phrases used in a contract, in seeking for the intent of the parties as evidenced by the words used, the fact that a construction contended for would make the contract unreasonable * * * may properly be taken into consideration." The claim of the plaintiff to recover $607.50 in return for a payment of $360 is without merit.

Lastly, the plaintiff urges that error was committed by the trial court which in any event requires a new trial. The alleged error consists in the exclusion of what was said by some supposed agent of the defendant bank to the plaintiff and his son. In his brief the plaintiff states that all that was sought to be proved by this oral testimony was " that the book was as good as gold, and Webber could have his money back any time he called for it."

The plaintiff, however, merely showed that the book was delivered by someone on behalf of the defendant, but was unable to state who this person was, and made no attempt either to identify such person or to show that he had authority to bind the defendant by statements outside of the writings in the book. These alleged statements, moreover, were made subsequent to the consummation of the contract between the parties. The action was not brought upon the theory that the plaintiff had been fraudulently induced by false representations to enter into the agreement in question, and there is nothing in the record to show that such was the fact.

It follows that the determination of the Appellate Term should be reversed and the judgment of the Municipal Court affirmed, with costs to the appellant in this court and in the Appellate Term.

DOWLING, P. J., MERRELL, McAVOY and PROSKAUER, JJ., concur.

Determination appealed from reversed and judgment of the Municipal Court affirmed, with costs to the appellant in this court and in the Appellate Term.