### November, 1902.

---

CHARLES SCHILLING, by EMMA SCHILLING, his Guardian ad Litem, Respondent, v. FREDERICK SMITH, Appellant.

*Vicious dog — injury to a weak-minded child who on other occasions had teased the dog — liability of the owner — proof that statements, contradicting her testimony, which a witness denies having made, were in fact made.*

In an action brought to recover damages for personal injuries sustained by the plaintiff, a weak-minded child, twelve years of age, while walking along a public street, in consequence of his being bitten by a vicious dog owned and kept by the defendant, it appeared that the defendant was aware of the vicious character of the dog and that he usually kept it confined upon his premises, but upon the occasion in question permitted it to go upon the street unattended; that the plaintiff had, to the knowledge of the defendant, for a period of several months, been in the habit of tantalizing the dog while confined, but that he in no manner interfered with the dog on the occasion when he was bitten or for several days previous thereto.

*Held,* that if the dog's attack on the plaintiff was the result of the plaintiff's conduct in tantalizing him previous to the occasion in question, that fact would not prevent a recovery provided the plaintiff did not have sufficient intelligence to know or understand what the effect of his conduct would or might be in that regard.

On the trial the defendant's wife, when called as a witness by him, gave testimony tending to show that the dog was not vicious. Upon cross-examination, she was asked if she did not say to certain persons immediately after the plaintiff was injured that if she had a revolver she would have shot the dog and that she had told the defendant to take care of the dog or it would bite somebody.

*Held,* that the witness having denied making such statements, which were relevant to the issue, it was proper to permit the plaintiff to impeach such denial

by calling the persons to whom the statements were alleged to have been made and proving the fact by them.

A witness cannot be cross-examined as to a distinct, collateral fact for the purpose of afterwards impeaching his testimony by contradicting him.

HISCOCK, J., dissented.

APPEAL by the defendant, Frederick Smith, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cattaraugus on the 30th day of January, 1902, upon the verdict of a jury for $235, and also from an order entered in said clerk's office on the 30th day of January, 1902, denying the defendant's motion for a new trial made upon the minutes.

*J. H. Waring,* for the appellant.

*M. B. Jewell,* for the respondent.

McLENNAN, J.:

The action was commenced on the 27th day of November, 1899, to recover damages for injuries sustained by the plaintiff by being bitten by a dog owned and kept by the defendant, which it is alleged was ferocious and accustomed to attack and bite people, to the knowledge of the defendant.

While the record in this case is quite voluminous, the material facts, and such as are necessary to present the questions involved upon this appeal, may be briefly stated.

The evidence tended to show that the plaintiff, who was twelve years of age, was bitten by defendant's dog while passing along Day street near the home of his parents in the village of Allegany, in the county of Cattaraugus, on the 26th day of October, 1899, at about ten o'clock in the forenoon, and thereby sustained injuries which were more or less serious. The plaintiff was not bright or well developed mentally, because of a serious illness which he had when a young child. The dog was a large, ferocious animal, and had attacked and bitten other people, to the knowledge of the defendant. It was kept to watch the store of the defendant at night, and was usually chained or kept in an inclosed yard during the day, but upon the occasion in question was permitted to be upon the street unattended. Previous to the day in question, for a

period extending over several months, the plaintiff, to the knowledge of the defendant, had been in the habit of tantalizing or bothering the dog while confined, and thus greatly angered or enraged the animal.

The evidence perhaps justifies the conclusion contended for by the appellant, that such interference caused the dog to attack the plaintiff, although he in no manner interfered with the dog on the occasion when he was bitten, or for several days previous, at least.

It was a question for the jury, upon all the evidence, whether or not the boy, because of his mental condition, knew or appreciated that his conduct toward the dog was improper, and that it would or might cause it to bite him, although he had been repeatedly told by the defendant to let the animal alone and to keep away from the yard or pen in which it was confined.

Many of the foregoing statements were sharply controverted upon the trial, but the evidence was of such a character as to make each a question of fact for the jury.

Upon those facts appearing, the learned trial court, after having stated to the jury the general rules of law applicable to actions of this character, charged, in substance, that if the plaintiff tantalized the dog from time to time, running over a period of months prior to the day when he was bitten, knowing and appreciating that such conduct would naturally provoke the dog to attack him and others, and he was bitten because of such conduct, he could not recover; but that if the plaintiff did not know or understand what the effect of his conduct would or might be, because of his lack of intelligence, he might recover, although his interference with the dog at other times previous caused it to bite him upon the occasion in question. The appellant's counsel duly excepted to that portion of the charge, and upon his request the court then charged: "If the jury find that the conduct of the plaintiff towards the dog had been such that it induced the dog to attack him, and that the dog would not have attacked him except for his treatment of the dog, then the plaintiff cannot recover."

The court refused to charge, as requested by appellant's counsel, to the effect that the want of intelligence on the part of the plaintiff, if any, did not require the application of any stricter rule of liability as against the defendant than if the plaintiff was a person

of ordinary intelligence for one of his years, and that the defendant's liability was in no manner changed because of the fact, if it existed, that the plaintiff did not understand and appreciate the probable effect of his acts in provoking the dog, and appellant's counsel duly excepted to the court's refusal to charge as requested.

It is urged that these exceptions present such error as to require a reversal of the judgment.

When the evidence in the case is considered in connection with the charge as made, and the disposition of the requests to charge, it is evident that the learned trial court simply intended the jury should understand that if the defendant's dog attacked the plaintiff because of any improper act on his part at the time he was bitten, no recovery could be had, whether such act was or was not the result of a lack of intelligence, or because of the inability of the plaintiff to understand and appreciate its probable effect; but that, if the dog was made cross, put in such temper as to make it likely that it would bite the boy when opportunity offered, because he had tantalized it at different times for a period of months before the day in question, and that such action at those times was in fact what led the dog to bite the plaintiff, such conduct would not prevent a recovery provided the plaintiff did not have sufficient intelligence to know or understand what the effect of his acts would or might be in that regard.

We are of the opinion that the instructions given to the jury by the learned trial court were quite as favorable to the appellant as he was entitled to. It is not the law that a ferocious dog, which is in no manner molested or interfered with at the time, may attack and bite a child or imbecile upon a public street, and that the owner, who knows the character of the dog and that it is accustomed to bite human beings, may relieve himself from liability by proving that such child or imbecile tantalized the animal on previous occasions when secured in his kennel or pen, even although they did not know or have sufficient intelligence to understand that such conduct might induce the dog to bite them when opportunity offered. Human life and limb are too precious to admit of the adoption of such a rule. Applied to the case at bar it would enable the defendant to say: It is true I owned and harbored a vicious dog, one which, to my knowledge, had bitten people; for

months I had seen the imbecile plaintiff acting toward the animal, while chained or secured in his pen, in a way which I knew would induce it to bite him if it was given an opportunity; at least I knew and understood more about it than the plaintiff did or could, yet, notwithstanding, I turned the dog loose upon the public street where I knew the plaintiff was liable to be at any moment, and he was bitten; but I am not liable for the injuries which he thereby sustained, because the plaintiff tantalized my dog at some time or or times previous, and, therefore, brought the injury upon himself.

Children, even weak-minded children, have the right to go upon the public streets and be protected against vicious dogs, although they may at some time previous have given offense to such animals by "tantalizing" them or by other improper acts, the effect or result of which they did not know or appreciate because of their lack of intelligence.

It may be true, as was in effect charged by the court, that if a person of mature judgment, fully appreciating what the conse-quences of his act would be, should tantalize and annoy a vicious dog while confined, for a period of months, and as a result of such conduct he should be bitten by the animal when released, a recovery could not be had for the damages sustained; but even those facts would not shield the owner from liability if, as in this case, he knew that the dog had been tantalized, knew what the effect of such action toward the animal would probably be, and then turned it loose so that it might have its revenge upon the person whose con-duct had angered or enraged it.

The case of *Muller* v. *McKesson* (73 N. Y. 195), cited by the learned counsel for the appellant, in no manner supports his con-tention. In that case it was held that in an action against the owner of a ferocious dog or other animal for injuries inflicted by it, the gravamen of the action is the keeping of the animal with knowl-edge of its propensities; and that the owner is bound to keep the animal secure at his peril. If he does mischief negligence is pre-sumed. This presumption cannot be rebutted by proof of care on the part of the owner in keeping or restraining it, and he is absolutely liable unless relieved by proof of some act or omission on the part of the person injured. What "act" or "omission" was in the mind of the court which would relieve the owner from liability is

made plain (p. 201), where the court said : " If a person, with full knowledge of the evil propensities of an animal, wantonly excites him, or voluntarily and unnecessarily puts himself in the way of such an animal, he would be adjudged to have brought the injury upon himself, and ought not to be entitled to recover. In such a case it cannot be said, in a legal sense, that the keeping of the animal, which is the gravamen of the offense, produced the injury." (Citing a large number of cases.) The court further said (p. 202): " To enable an owner of such an animal to interpose this defense, acts should be proved, with notice of the character of the animal, which would establish that the person injured voluntarily brought the calamity upon himself."

What the Court of Appeals meant by " acts " or " omissions " is further illustrated by its language in *Lynch* v. *McNally* (73 N. Y. 347), where the court said :

" *Second.* That contributory negligence, as that term is understood in law, is not a defense.

" *Third.* That to constitute a defense to such an action, it must be established that the person injured did some act from which it may be affirmed that he brought the injury upon himself. If a person should thrust his arm into a bear's mouth and get bit, it could not be said that the injury was caused by keeping the bear; and so, if a person, knowing the vicious propensities of a dog, should wantonly or willfully do an act to induce the dog to bite, or should unnecessarily and voluntarily put himself in the way of the dog, knowing the probable consequences, the same principle would apply."

It is clear that the " act " or " omission " referred to has reference to something done or omitted at the time, and immediately connected with the occasion when the biting or attack of the dog took place, and has no reference to what may have been done or omitted weeks or months before. In the case at bar the jury had a right to find, upon the evidence, that the plaintiff, by reason of his impaired intellect, was incapable of wantonness or willfulness, and that he did not know of — because he could not understand — the vicious propensities of the dog.

It is not claimed that the plaintiff improperly interfered with the dog at the time, or immediately prior to the time, when he was

FOURTH DEPARTMENT, NOVEMBER TERM, 1902. [Vol. 76.

attacked and bitten, but it is urged that he did so act at other times previous, in no manner connected with the occasion in question. The jury, however, had a right to find that the plaintiff did not know the nature of such acts, or the consequences which would probably result therefrom. Under those circumstances, we conclude that the trial court was right in instructing the jury that such conduct on the part of the plaintiff did not constitute a defense to the action brought by him.

It is further urged that error was committed by the learned trial court in the admission of evidence over defendant's objection. The wife of the defendant, who was called as a witness by him, gave evidence tending to show that the dog in question was not vicious or ferocious; that it was tractable, easily controlled; was frequently allowed to be with strangers unattended, and described generally the dog, its habits and characteristics. Upon cross-examination the witness was asked if she did not say, immediately after the plaintiff was injured, to certain persons named, in substance, that if she had had a revolver she would have shot the dog, and that she had told the defendant to take care of the dog or it would bite somebody. The witness denies having made any statements of the kind, and the plaintiff was permitted to call the persons to whom it was claimed the witness made such statements and prove the fact by them.

The rule of law applicable to this question is well settled. A witness " is not to be cross-examined (as) to a distinct collateral fact, for the purpose of afterwards impeaching his testimony by contradicting him." (*Lawrence* v. *Barker*, 5 Wend. 301.)

It is clear that it is only in such matters as are relevant to the issue that a witness can be contradicted; so that the only question is whether or not the evidence given by defendant's wife was of such a character that the jury might have inferred from it that the dog was not ferocious; was not accustomed to bite people, or at least that the defendant had no knowledge of such propensities, if they existed. If the witness had testified that the dog was perfectly gentle and mild of disposition; that he was made a playmate of by the children of the neighborhood, it would have been competent to show that the witness had made statements out of court in conflict with the testimony so given by her. It is not irrelevant to inquire of a witness whether he has not, upon some former occasion, given

a different account of a matter of fact to which he has already testified, in order to lay a foundation for impeaching his testimony by contradicting him. This right to lay the foundation for the purpose of impeachment, reaches to any question touching the credibility of a witness.

The conclusion is reached that the reception of the evidence objected to does not constitute such error as to require a reversal of the judgment.

It follows that the judgment and order appealed from should be affirmed, with costs.

SPRING, WILLIAMS and DAVY, JJ., concurred; HISCOCK, J., dissented.

Judgment and order affirmed, with costs.