KAREN MALCHANOFF & another vs. WILLIAM TRUEHART
& another.

Suffolk.    February 7, 1968. — April 3, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Dog. Witness*, Child witness, Knowledge of witness, Recollection of wit-
ness. *Evidence*, Presumptions and burden of proof. *Words*, "Teasing."

In an action by a plaintiff eight and one-half years old at the time of
trial, for injuries from the bite of a dog when she was three years and
three months old, where her pediatrician testified that she was an
"alert youngster who would compare with any average child her age
in intelligence," and her competency to testify in general was amply
supported by the evidence and was not challenged, there was no
error of law in permitting her to testify, without any preliminary
examination by the judge, as to the events which occurred when she
was injured. [122]

Testimony by the plaintiff in an action for injuries from the bite of a dog
that all she did was to offer the dog a bone, whereupon he growled
and bit her, satisfied the burden on her of proving that she was not
"teasing, tormenting or abusing" the dog so as to be precluded from
recovery by G. L. c. 140, § 155, as appearing in St. 1934, c. 320,
§ 18. [123]

At the trial of an action under G. L. c. 140, § 155, as appearing in St. 1934,
c. 320, § 18, for injuries from the bite of a dog, there was no error in
permitting the jury to consider the plaintiff's age on the issue whether
she was "teasing, tormenting or abusing the dog" and so precluded
from recovery. [124]

TORT.    Writ in the Superior Court dated December 30,
1961.

The action was tried before *Moynihan*, J.

*Samuel Leader* for the plaintiffs.

*Franklin C. Bronson (L. Richard Shuckra* with him) for
the defendants.

SPALDING, J.    This action of tort was tried on two counts.
In one, the female plaintiff (plaintiff), by her next friend,
seeks to recover under G. L. c. 140, § 155, as appearing in
St. 1934, c. 320, § 18, for injuries alleged to have resulted

from an attack of a dog owned by the defendants. In the other, the plaintiff's father seeks consequential damages. The case was referred to an auditor (findings not final) who found for the defendants. Thereafter it was tried to a jury on the auditor's report and other evidence. Verdicts were returned for the plaintiff and her father. The case is here on the defendants' exceptions (1) to a ruling on evidence, (2) to the denial of their motion for directed verdicts, (3) to a portion of the charge, and (4) to the denial of their motion for a new trial.

We summarize the evidence as follows: The plaintiff (Karen), aged three years and three months when injured, lived with her parents, Walter and Janice Malchanoff, in a single family house, on Columbus Street, Chelsea. The land surrounding the house was completely enclosed by a fence three to three and a half feet high. The defendants' property adjoined the Malchanoff's property. The defendants owned a Canadian Shepherd dog named Rennie, which was described as "very similar to a Collie."

On the morning of June 3, 1961, Mrs. Malchanoff permitted Karen to go into the yard. A minute or two later, hearing a scream, she discovered Karen kneeling on the lawn and screaming; her face was bleeding. Rennie was lying on the lawn close to her.[1]

Karen, who at the time of the trial was eight and one-half years old, testified subject to the defendants' objection and exception, that on the day she was injured she found Rennie in the front yard "eating a bone." There was another bone on the ground and, according to Karen, she picked it up and attempted to give it to Rennie, who dropped the bone he was eating and bit her. Karen stated that all she did to Rennie was to try to give him a bone.

1. Dr. Hyman A. Berson, a specialist in pediatrics, was called by the plaintiff. He had treated Karen for the injuries sustained by the dog bites on June 3, 1961, and had treated

---

[1] The auditor found that Rennie bit Karen about the face, causing lacerations, and that although Karen "did not molest the dog by striking it with a stick" he, nevertheless, concluded that she did not sustain the burden of proving that "she did not tease, torment or molest the dog."

her · from time to time ever since she was born. In his opinion, the plaintiff was an "alert youngster who would compare with any average child her age in intelligence." On cross-examination he testified that as to her capacity at the age of three to remember and relate what happened to her the same day "there would be no way of really knowing; except that if they go through any experience you can usually gauge a great deal by their emotional reactions at the time of an examination." The doctor was then asked, "What would your opinion be . . . of a normal child's capacity such as Karen, who is now, as I understand it, eight years old, relating something that happened to her when she was three years and three months old?" His answer was, "I doubt very much whether she could really explain fully just what happened in such a long period of time."

Karen then was called as a witness and was sworn. Before she gave any testimony, the defendants objected to her testifying "on the grounds that she was an incompetent witness; that at the age of eight . . . she was now going to be asked to relate an incident that happened when she was three." The objection was overruled and Karen was permitted to testify, subject to the defendants' exception. There was no voir dire and none was requested. We do not construe the objection as raising the question whether Karen possessed the "sufficient understanding" necessary to qualify her as a witness under G. L. c. 233, § 20. As the objection was worded, the judge could rightly assume that the sole basis of it was whether the witness should be allowed to testify to events which occurred when she was three years and three months old.

. We might add that the evidence of Karen's competency to testify in general was ample. Karen, who was eight and one-half years old at the time of trial, testified that she was in the third grade at school, attended church often, and had been taught what it means to tell the truth and the consequences of not telling the truth. In addition, there was the testimony of Dr. Berson, recited above. The test of competency is not age but the capacity to understand and

communicate coupled with a consciousness of the duty to speak the truth. Wigmore on Evidence (3d ed.) § 506. McCormick on Evidence, § 62. *Commonwealth* v. *Hutchinson*, 10 Mass. 225. *Commonwealth* v. *Robinson*, 165 Mass. 426. *Commonwealth* v. *Teregno*, 234 Mass. 56, 59. *Commonwealth* v. *Tatisos*, 238 Mass. 322. *Commonwealth* v. *Welcome*, 348 Mass. 68, 70.

The defendants' objection in effect asked the judge to rule as matter of law that Karen could not testify as to the earlier events which occurred when she was slightly more than three years old. At the time the objection was made, Dr. Berson, Karen's pediatrician, had testified. His testimony (summarized above) afforded some, albeit slight, basis for allowing her to testify to the earlier events. Dr. Berson's doubt "whether she could really explain *fully* just what happened in such a long period of time" was not an opinion that she was incapable of remembering anything (emphasis supplied). Karen testified to what happened when she was injured. It appeared that she remembered the events which occurred when she was injured and was able to communicate her recollection. The defendants' counsel cross-examined her at some length. The examination was directed to testing her memory as to past events and as to whether she was testifying as to what she had been told. Her version was not shaken to any appreciable extent.

The defendants complain that there should have been a preliminary examination by the judge before Karen was permitted to testify. Usually when there is a question of the competency of a child to testify, the matter is determined by the judge on a voir dire examination. This is made clear in *Commonwealth* v. *Reagan*, 175 Mass. 335, where in an illuminating opinion by Hammond, J., the matter is exhaustively discussed with ample citation of authorities. But strictly speaking the question was really not one of competency. The distinction between competency on the one hand and the requisite knowledge on the other is well illustrated by the following comments in the Model Code of Evidence. "Qualification to be a witness is to be distin-

guished from the possession of knowledge by a witness suffi-
cient to enable him to testify concerning a specified matter."
Model Code of Evidence, Rule 101, comment a. "Ordi-
narily if a witness offers to testify that he has knowledge of
a material matter acquired by the exercise of his own senses,
it is for the trier of fact, rather than for the judge in his
capacity as judge, to determine whether the testimony is to
be believed. . . . If the witness proposes to testify that he
actually perceived a material matter, he must usually be
permitted so to testify unless his story is inherently im-
possible or so fantastic that no rational person could rea-
sonably believe it. . . . Consequently when a witness offers
to testify to a personal experience relevant in itself, the
question of the possibility of the truth of his story is rarely
raised by an objection to admissibility. It is more generally
raised by a request to charge the jury to disregard the story
or by a motion for a directed verdict." Model Code of
Evidence, Rule 104, comment. To the last sentence there
might be added, "or by a motion to strike." The question
here is whether Karen, whose competency in general was
not challenged, could testify as to events which occurred
about five years before. It cannot be said as matter of law
that she could not. If it appeared on cross-examination
that Karen lacked capacity to remember the events when
she was injured, a motion to strike would have been in
order. But this course was not pursued. We are of opinion
that the judge did not err in permitting Karen to testify.

2. The defendants argue that the judge erred in denying
their motion for directed verdicts because the plaintiff failed
to prove that she was not "teasing, tormenting or abusing"
the dog when she was injured. The plaintiffs' action is based
on G. L. c. 140, § 155, as appearing in St. 1934, c. 320, § 18,
which provides in part: "If any dog shall do any damage
to either the body or property of any person, the owner or
keeper . . . shall be liable for such damage, unless such
damage shall have been occasioned to the body or property
of a person who, at the time such damage was sustained,
was committing a trespass or other tort, or was teasing, tor-

menting or abusing such dog." The statute imposes strict liability on the owner or keeper of a dog which shall "do any damage to . . . the body or property of any person," and proof that the owner was negligent, or otherwise at fault, or knew that the dog had any dangerous propensities is not essential to recovery. *Canavan* v. *George*, 292 Mass. 245, 247. *Curran* v. *Burkhardt*, 310 Mass. 466. But the burden was on the plaintiff to prove that she was not "teasing, tormenting or abusing such dog." *Sullivan* v. *Ward*, 304 Mass. 614.

The plaintiff introduced evidence sufficient to satisfy this burden because, according to her testimony, all she did was to offer the dog a bone, whereupon he growled and bit her. The jury could infer from this evidence that she was not teasing the dog. See e.g., *Koller* v. *Duggan*, 346 Mass. 270, 273.

3. The defendants excepted to a portion of the charge where the judge permitted the jury to consider the child's age in relation to the issue whether the plaintiff was teasing, tormenting or abusing the dog.[2] In this connection the defendants urge that "teasing" must be looked at from the point of view of the dog and that a child's age is therefore irrelevant. We disagree. The fact that the plaintiff's conduct may have induced the defendants' dog to bite her does not necessarily bring her within the exceptions to liability contained in the statute. See *Koller* v. *Duggan*, 346 Mass. 270, 272–273. As the Supreme Court of Errors of Connecticut has said in construing a statute almost identical to ours: "In common parlance, the verbs 'tease,' 'torment' and 'abuse' all connote the doing of acts designed to annoy and irritate the person or animal to whom or which the acts are directed. As used in the statute, they carry this connotation. None of them is apt for describing friendly playing

---

[2] The relevant portions of the charge are: "On that question, as to whether the child was teasing, tormenting, or abusing the dog, you are entitled, in viewing the conduct of the child, to take into consideration the age of the child and the type of conduct to be expected of a child that age. . . . In considering whether the plaintiff was at fault you are entitled to take into consideration her tender age."

with a dog. It is common knowledge that ordinarily dogs enjoy play with humans. When a person engages in such play, it is not natural for a dog to resent it or be irritated by it to the extent that the dog will attack. It follows that playing with a dog, as the child plaintiff in this case was doing, is not such conduct as falls within the exceptions to liability contained in the statute." *Weingartner* v. *Bielak*, 142 Conn. 516, 519–520. In that case a child two and one-half years old was playing with a dog, the play consisting of throwing a rubber bone for the dog to retrieve; she was injured while attempting to pick up the bone for further play. A finding that the plaintiff was not teasing, tormenting or abusing the dog was upheld. See also *Kowal* v. *Archibald*, 148 Conn. 125, 130; *Funk* v. *Bannon*, 148 Conn. 557, 560–561; *Schilling* v. *Smith*, 78 N. Y. Supp. 586.

It follows that the judge did not err in instructing the jury to consider the age of the child, because age may have been relevant to determine whether the child was capable of teasing, tormenting or abusing the dog.

4. The defendants' exception to the denial of their motion for a new trial requires no discussion. The motion was based for the most part, on the matters discussed above; its denial reveals no abuse of discretion.

*Exceptions overruled.*