NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

22-P-954                                    Appeals Court

MICHILINE NICKERSON  vs.  JANET FLYNN-MORRIS & another.[1]

No. 22-P-954.

Middlesex.    October 12, 2023. – January 24, 2024.

Present:  Neyman, Henry, & Ditkoff, JJ.

Dog.  Strict Liability.  Rules of the Superior Court.  Practice, Civil, Summary judgment, Directed verdict.

Civil action commenced in the Superior Court Department on June 7, 2018.

The case was tried before Cathleen E. Campbell, J.

Robert J. Bonsignore for the plaintiff.
Cory S. Arter for Janet Flynn-Morris.

NEYMAN, J.  The plaintiff, Michiline Nickerson, filed suit against the defendant, Janet Flynn-Morris, for violation of the strict-liability dog bite statute, G. L. c. 140, § 155. Following a trial in the Superior Court, a jury rendered a verdict in favor of the plaintiff and awarded her damages in the

_____

[1] Arbella Insurance.

amount of $4,730.43.  Despite prevailing at trial, the plaintiff appeals contending that the Superior Court judge's denials of her motions for partial summary judgment and for a directed verdict constituted error that caused jury deliberations to be "impermissibly contaminated."  We affirm.

Background.  We review the evidence in the light most favorable to the defendant.  See Parsons v. Ameri, 97 Mass. App. Ct. 96, 105 (2020) (when reviewing denial of motion for directed verdict, we "construe the evidence in the light most favorable to the nonmoving party and disregard that favorable to the moving party" [citation omitted]).[2]

On August 15, 2016, the plaintiff walked with her ninety-five year old friend, Michael, to a nearby park in Medford.  Michael brought Lancer, his small "Maltese-type dog."  The plaintiff and Michael sat on a park bench, and plaintiff "had Lancer . . . on a leash that [she] was holding."

Around the same time, the defendant entered the park with her dog, Governor, a three-legged "boxer mix" rescue dog.  She had Governor on a leash, but "lost the grip."  Governor ran toward the park bench where the plaintiff, Lancer, and Michael sat.  The defendant ran after Governor.  According to the

---

[2] For the reasons discussed below, the plaintiff's claim regarding the denial of the motion for partial summary judgment is not properly before us and thus we do not review the evidence under the summary judgment standard.

defendant's version of events, she was only about sixty feet from the plaintiff when Governor "broke free." She saw the plaintiff "stand up from the left side of the bench and fell over to the left side to pick up her dog, and then she started screaming and yelling." The defendant never saw Governor bite the plaintiff or Lancer.[3] The plaintiff screamed and swore at the defendant but did not "make a statement that she was bitten."

At some point, the plaintiff saw blood dripping down her leg. She called the police and she and the defendant took photographs of her injuries. Detective John Pellegrino of the Medford police department arrived at the scene, spoke with the parties, and observed what "looked like a puncture wound" on the plaintiff's left leg.[4] The plaintiff walked Michael to his home and was taken to the hospital later that day.

---

[3] The plaintiff's version of events differed from that of the defendant in myriad ways. The plaintiff testified, inter alia, that Governor "came out of nowhere" and "stuck his fangs in [Lancer] and started shaking him to death." The plaintiff tried to separate the dogs and she and the two dogs "ended up going over the back of the bench and landing up on the ground behind the bench." She returned to the bench, saw blood dripping down her leg, and realized that she had been bitten. Medical records admitted in evidence corroborated the plaintiff's claims in part.

[4] Detective Pellegrino testified that the wound on the plaintiff's leg "did look consistent with a dog bite." However, he could not "tell exactly what" had caused the wound and "couldn't say if it was from a dog or something else." He also did not observe any injuries to Lancer.

On June 7, 2018, the plaintiff filed a three-count complaint alleging a violation of G. L. c. 140, § 155, and negligence[5] against the defendant, as well as violations of G. L. cc. 176D and 93A, against the defendant's insurer, Arbella Insurance (Arbella).[6]  Pursuant to the Superior Court civil tracking order, the deadline for serving summary judgment motions under Mass. R. Civ. P. 56, 365 Mass. 824 (1974), was May 3, 2019.  On March 18, 2022, two weeks prior to the scheduled trial date and nearly three years after the tracking order deadline had passed, the plaintiff filed directly with the Superior Court a motion for partial summary judgment, supporting memorandum of law, and "Consolidated Statement of Material Facts" in support of the motion.  The plaintiff did not serve the motion and supporting materials on the defendant pursuant to Rule 9A of the Rules of the Superior Court (2018) (rule 9A).  At the final pretrial conference held on April 4, 2022, the judge denied the motion for partial summary judgment.

The jury trial commenced on April 6, 2022.  The plaintiff's case consisted of testimony from the plaintiff, the defendant, Detective Pellegrino, and three experts:  a medical doctor, a

---

[5] The plaintiff filed a stipulation of dismissal as to the negligence claim prior to trial.

[6] The chapter 93A action against Arbella was severed and stayed, and Arbella is not a party to the present appeal.

certified rehabilitation counselor, and an economist. The judge also admitted the plaintiff's medical records and additional exhibits in evidence.[7] Following the plaintiff's case, the defendant called a board-certified neurologist to testify and then rested. As further discussed below, the judge denied the plaintiff's motions for a directed verdict brought at the close of the plaintiff's own case and at the close of all evidence. On April 12, 2022, the jury returned a verdict in favor of the plaintiff in the amount of $4,730.43. Judgment entered on May 13, 2022, and this appeal ensued.

Discussion. The strict-liability dog bite statute, G. L. c. 140, § 155, provides in relevant part:

> "If any dog shall do any damage to either the body or property of any person, the owner or keeper . . . shall be liable for such damage, unless such damage shall have been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog."

The statute "imposes strict liability on the owner or keeper of a dog which shall 'do any damage to . . . the body or property of any person,' and proof that the owner was negligent, or otherwise at fault, or knew that the dog had any dangerous propensities is not essential to recovery." Malchanoff v.

_____

[7] The jury also heard evidence concerning the plaintiff's preexisting disability, treatment, and medical conditions including a "bipolar" condition, emotional suffering, and anxiety.

Truehart, 354 Mass. 118, 123 (1968), quoting G. L. c. 140, § 155.  In other words, the statute is indifferent to any question of negligence on the part of the owner.  See Malchanoff, supra.  See also Salisbury v. Ferioli, 49 Mass. App. Ct. 485, 489-490 nn.6-7 (2000).  However, the plaintiff bears the burden of proving that the dog caused the damage and that she was not "teasing, tormenting or abusing such dog." Malchanoff, supra, quoting Sullivan v. Ward, 304 Mass. 614, 614 (1939).

1.  Denial of plaintiff's motion for partial summary judgment.  The plaintiff first contends that the defendant's liability was beyond dispute, and therefore the judge's erroneous denial of her motion for partial summary judgment allowed the defendant to present an irrelevant and prejudicial liability defense, which "contaminated" jury deliberations.  The claim is unavailing for several reasons.

First, the present case provides an opportunity to restate the well-established, but oft-forgotten, rule that "the denial of motions for summary judgment and partial summary judgment will not be reviewed on appeal after a trial on the merits." Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 126 (1986).[8]  This is so because "[t]he merits of a claim

---

[8] The rule does not preclude review of the denial of summary judgment where the trial on the merits involved a different

are better tested on appeal on the record as it exists after an evidentiary trial than on the record in existence at the time the motion for summary judgment was denied." Id. "This is true even if we think summary judgment should have been allowed." Harootian v. Douvadjian, 80 Mass. App. Ct. 565, 567 (2011). Where, as here, there was a trial on the merits and final judgment entered, the denial of the plaintiff's motion for partial summary judgment is not reviewable on appeal.

Second, the plaintiff filed the motion for partial summary judgment nearly three years after the expiration of the tracking order deadline. This, standing alone, was a sufficient basis for the judge to deny the motion. See Commonwealth v. Sanchez, 74 Mass. App. Ct. 31, 34 n.4 (2009) (delegating to Superior Court power to institute procedures for meeting statutory deadlines and approving of Superior Court Standing Order 1-88 which governs civil litigation time standards including tracking orders).

Third, the plaintiff filed the motion for partial summary judgment directly with the Superior Court rather than follow the procedure required by rule 9A. Consequently, the defendant was not afforded the opportunity to respond within the framework of

---

claim from that which was the basis for the summary judgment motion. See Harootian v. Douvadjian, 80 Mass. App. Ct. 565, 567 n.4 (2011). See also Waxman v. Waxman, 84 Mass. App. Ct. 314, 322-323 (2013). That is not the case here.

rule 9A.  See Rule 9A (b) (5) (ii)-(iv) of the Rules of the Superior Court (2018).  Moreover, the "Consolidated Statement of Material Facts" filed in support of the motion for partial summary judgment was anything but consolidated.  Instead, it contained solely the plaintiff's statement of facts with no responses from the defendant who, again, did not have the opportunity to respond under the procedure required by rule 9A (b) (5) (iii) (A).  See also Rule 9A (b) (5) (iv) (A) of the Rules of the Superior Court (2018) ("The Rule 9A Package must also include the Joint Appendix and a Consolidated Statement of Facts, which must include the opposing party's responses to the Moving Party's Statement of Facts").  The plaintiff argues that rule 9A "does not apply to a party who files an ex parte motion, emergency motion, or motion for appointment of a special process server."  See Rule 9A (d) (1) of the Rules of the Superior Court (2018).  Here, the motion was not captioned, filed, or docketed as an emergency motion.[9]  Moreover, the mere labeling of a pleading as an "emergency motion" does not establish an "emergency" within the meaning of the rule.  We take this opportunity to reiterate that compliance with rule 9A is not a

---

[9] The plaintiff filed a motion for short order of notice on the same day that she filed the motion for partial summary judgment.  In the present circumstances the filing of such a motion, without more, does not overcome the failure to comply with the tracking order deadline and failure to comply with rule 9A.

mere formality; rather, as stated in rule 9A (b) (5) (vii), judges "need not consider any motion or opposition that fails to comply with the requirements of this Rule, may return non-compliant submissions to counsel with instructions for re-filing, and may impose other sanctions for flagrant violations of the Rule."  See Dziamba v. Warner & Stackpole LLP, 56 Mass. App. Ct. 397, 399-401 (2002).  For all the foregoing reasons, the judge did not abuse her discretion in denying the motion for partial summary judgment.

2.  Denial of plaintiff's motion for a directed verdict. The plaintiff also contends that the judge erred in denying her motion for a directed verdict on liability and, as a result, "the jury deliberations were impermissibly contaminated," which necessitates a new trial on the issue of damages.  Specifically, the plaintiff argues that because the G. L. c. 140, § 155, strict liability standard applied, and liability was not contested, the admission in evidence of extraneous issues related to liability, such as the plaintiff's preexisting "mental illness" and mitigating facts favoring the defendant, prejudicially impacted jury deliberations.  The claim is without merit.

In reviewing a motion for a directed verdict, we construe the evidence in the light most favorable to the nonmoving party and disregard that favorable to the moving party.  See Parsons,

97 Mass. App. Ct. at 105. In this regard, we must evaluate "whether anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be made in favor of the [nonmovant]" (citation and quotation omitted). Id. "As a general matter, a party seeking to undo a jury verdict based on a claim that the jury were required as a matter of law to come to a particular result faces a very formidable burden." Norrell v. Spring Valley Country Club, Inc., 98 Mass. App. Ct. 57, 64-65 (2020).

At trial, the plaintiff first moved for a directed verdict at the close of her own case. The plaintiff appeared to file the motion at that time under the theory that she was entitled to a directed verdict before the defendant had the opportunity to present her own case. The judge denied the motion and did not err in doing so. The plain language of the rule governing such motions, Mass. R. Civ. P. 50 (a), 365 Mass. 814 (1974), states that

> "[a] party may move for a directed verdict at the close of the evidence offered by an opponent, and may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made."

Rule 50 (a) further states that "[a] party may also move for a directed verdict at the close of all the evidence." The rule thus allows the filing of a directed verdict motion at two distinct junctures: the close of the opponent's case and the

close of all the evidence. It does not authorize a party to move for a directed verdict at the close of its own evidence, before the opposing party has had the opportunity to offer evidence on its own behalf, and the plaintiff does not cite to any legal authority suggesting otherwise.[10]

Furthermore, the defendant did not concede liability, and, indeed, the defendant's testimony and evidence contradicted much of that presented by the plaintiff.[11] Thus, although the plaintiff's case as to liability was strong, the judge did not err in denying the plaintiff's motion for a directed verdict brought at the close of her case, even assuming the motion was procedurally proper. For the same reason, the judge did not err in denying the plaintiff's renewed motion for a directed verdict brought at the close of all the evidence.

Even assuming, arguendo, that the judge should have allowed the motion for a directed verdict, any error would have been

---

[10] The plaintiff also argues that the judge erred in denying her motion for a directed verdict made after the defendant's opening statement. The record does not support this claim, as the plaintiff renewed her motion for partial summary judgment after the defendant's opening statement but did not move for a directed verdict at that time. Moreover, a motion for a directed verdict would have been properly denied at that juncture.

[11] See, e.g., note 3, supra. We note that the transcripts and record before us reflect a hard-fought trial involving substantial pretrial motion practice and myriad contested issues at trial litigated by experienced counsel for the parties, both of whom received a fair trial.

harmless. First, the evidence that was relevant to the issue of liability -- e.g., facts surrounding the events in the park, the plaintiff's claims of injury, the nature and extent of her injuries, and her preexisting medical and mental health conditions[12] -- was likewise relevant and admissible as to the issue of damages, especially where the plaintiff sought damages for, inter alia, pain and suffering and "mental trauma."[13] Second, the jury returned a verdict in favor of the plaintiff on the issue of liability.[14] Finally, the judge's clear and comprehensive jury instructions, none of which are challenged on appeal, obviated any risk of prejudice. See Reckis v. Johnson & Johnson, 471 Mass. 272, 304 n.49 (2015), cert. denied, 577 U.S. 1113 (2016) ("We presume that the jury followed these

---

[12] In his opening statement, counsel for the plaintiff introduced issues related to his client's "disability," bipolar condition, and preexisting "illness."

[13] The judge's final charge on damages included instructions regarding "pain and suffering damages," physical pain and suffering, mental anguish, "past, present, and probable future mental suffering," medical expenses, and future damages.

[14] The plaintiff cites to no legal authority, nor are we aware of any, that supports the proposition that where a judge wrongly denies a motion for a directed verdict as to a specific issue (here liability) and a jury returns a verdict in favor of the moving party (here the plaintiff), that party is nonetheless entitled to a new trial.

instructions in rendering their verdict").[15]  Accordingly, we affirm the judgment.

So ordered.

---

[15] We deny the defendant's motion for fees and costs on appeal.